NEIL O'MARR and Others, Respondents, v. BRIDGET BELLE McLEAN and Others, Appellants, Impleaded with MICHAEL O'MARR and Another, Defendants.*

Fourth Department, January 8, 1930.

* Revg. 134 Misc. 143.

*William S. Rann*, for the appellants.

*John L. Heider*, for the respondents.

TAYLOR, J.  Sarah O'Marr owned in fee about six acres of land near the village of Angola, Erie county, N. Y., upon which she lived from 1863 till her death in September, 1906.  She had six children, five daughters and one son, the defendant Michael O'Marr.  Plaintiffs, who are children of Michael O'Marr, brought this action to impress a lien upon this real estate in the amount of $2,055, and have obtained judgment.  Plaintiffs' entire theory — which we find has not been substantiated — is that Sarah O'Marr lived with her son Michael, and was supported by him and plaintiffs; that she frequently told plaintiffs that, in consideration of their helping support her, she intended to leave this real estate to them and Michael O'Marr, and that it was in reliance upon these promises that plaintiffs made the contributions later specified; that after the grandmother died in 1906, plaintiffs made valuable, permanent improvements and additions to the premises for sixteen years (1908–1923), under the belief that they were true and lawful owners of the premises; that defendants all had knowledge of this claim of ownership, and assented to the making of the improvements with such knowledge; that plaintiffs did not know that they were not owners till just prior to July 1, 1924, when they first learned that their grandmother had left a will; and that the defendants willfully and wrongfully withheld knowledge of the existence of the will from plaintiffs.  Defendants traversed these

claims by pleading and testimony. The will referred to was executed in October, 1896, was placed in the hands of an attorney to probate in 1915, but, owing to his death and perhaps to other reasons, was not probated until 1924. Under the will Michael O'Marr was a life tenant and his sisters remaindermen holding a vested future estate. (Real Prop. Law, §§ 36, 40.)

Plaintiffs' father Michael lived on these premises from 1888 to 1929, and his widow and plaintiff Neil O'Marr still live there. Michael was in possession all this time as a life tenant, and much of the time while these improvements were being made plaintiffs occupied the premises with their parents without rent. There is credible testimony that plaintiffs' mother, one of the defendants, contributed substantially to the cost of these improvements. Several items of them were nothing more than repairs. The improvements were made between 1908 and 1923, and in 1908 plaintiff Sadie Sobjak — Michael O'Marr's oldest child — was but eighteen years old and the youngest child, plaintiff Julia Meisner, was seven. Plaintiff Julia Meisner testified that defendant Bridget McLean told the witness and her mother to " go ahead and make the place comfortable to live in. * * * Q. Did she say that you would be reimbursed for the money that you expended on these improvements? No, sir, she did not. She simply said, go ahead and do the work and make the place a comfortable one to live in." Plaintiff Sadie Sobjak testified: " We thought, well, we will fix this up, and make it a place to live in; it was theirs [her father's and mother's] as long as they lived, any improvements we put there was for their benefit, it was not for ours; if I was putting any for my benefit, I would not have been putting it there; I was not living there; I was putting it there for the benefit of father and mother and to make it a place to live in."

This seems like an admission that the furnishing of all these repairs and improvements was purely voluntary, and for the comfort of plaintiffs' father and mother rather than with any hope of reimbursement.

Two of the plaintiffs were permitted to give testimony, under objection, as to what their deceased grandmother, Sarah O'Marr, had said to them about the property eventually being theirs. This testimony was admitted upon the theory that it was not part of a " personal transaction or communication " (Civ. Prac. Act, § 347) between the witnesses and the deceased testatrix, but was merely in substantiation of plaintiffs' good faith and honest intent. A state of mind is a fact. (*Deyo* v. *Hudson*, 225 N. Y. 602, 612.) An attitude of mind may be proved, when it is material. But a mental attitude may not be established as a fact by proving as a

basis for it a personal transaction or communication barred by section 347 of the Civil Practice Act. The testimony in question was vitally important, particularly in view of the weaknesses in plaintiffs' case to which we have referred. The conversations testified to were the principal cause — in fact, the only adequate cause — of developing in plaintiffs the idea that they were to be the owners of the property. And unless those conversations had the force and effect of an agreement to transfer, or in some manner gave reason for the intervention of equity, why was the testimony presented? The witnesses were persons " interested in the event," the testimony was given against persons deriving title from, through or under a deceased person. (Civ. Prac. Act, § 347.) It is material, therefore, harmful, and within the prohibition of the statute. (*Griswold* v. *Hart*, 205 N. Y. 384.)

In its opinion the learned trial court concedes (a) that the plaintiffs are not seeking to enforce any agreement with their grandmother that upon the death of their father Michael, the property would be theirs, and (b) that plaintiffs had no legal justification for believing that in the absence of any will they would become the owners of the property after their father's death. But the conclusion is reached that plaintiffs made these improvements in the honest belief that they were the owners of the property, subject to their father's life estate; and that they made the improvements in good faith, in innocent mistake as to ownership, and are entitled to equitable relief.

" Good faith " and " honest belief " on the part of plaintiffs, unless standing upon a foundation adequate in law, would be valueless. Belief in an oral agreement to convey would amount to nothing (Real Prop. Law, §§ 242, 259), a trust by operation of law not having been created. There was no belief or claim that the grandmother had conveyed. There was no belief that the grandmother had willed the property to plaintiffs, which she in fact had not done.

Plaintiffs' only claim or color of title rested in their being remaindermen holding vested title to an expectant estate. They had no possessory right when the action was brought. Even as tenants in common plaintiffs would have no right of contribution unless their cotenants had agreed to contribute to the expense, or had so behaved with foreknowledge of the improvements that they ought equitably to be compelled to pay. (*Cosgriff* v. *Foss*, 152 N. Y. 104, 110; *Scott* v. *Guernsey*, 48 id. 106, 123.) Plaintiffs' good faith, then, and their belief, however honest, cannot avail them, they not having proved that the improvements were made at the request of the defendants or under such circumstances that

a promise to reimburse might reasonably be inferred. Furthermore, the record shows that defendants did not know of plaintiffs' claim of ownership before the action was brought. And not only is there no testimony that knowledge of the existence of a will was wrongfully withheld from plaintiffs by defendants, but there is even a finding, made at the request of defendants, which absolves defendants in this respect.

The judgment should be reversed on the law, with costs, and the complaint dismissed, with costs. Certain findings of fact and all conclusions of law disapproved and reversed, and new findings and conclusions made.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

Judgment reversed on the law and facts, with costs, and complaint dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed, and new findings and conclusions made