ANNA BREZINSKI, Appellant, v STELLA BREZINSKI et al., Individually and as Distributees of the Estate of HENRY BREZINSKI, Deceased, et al., Respondents.

Fourth Department, January 29, 1982

APPEARANCES OF COUNSEL

*Anthony F. Shaheen* (*Kenneth Ray* of counsel), for appellant.

*Dominic J. Zito* for respondents.

OPINION OF THE COURT

HANCOCK, JR., J.

We hold that in an action against representatives of a deceased tenant of joint savings accounts (see Banking Law, § 675), CPLR 4519 does not bar the surviving tenant

from testifying concerning her intent in establishing the accounts so long as her testimony relates to the fact of that intent and not to any communications or transactions with the deceased tenant.

Plaintiff has sued her daughter-in-law and two grandsons to recover the entire proceeds of certain joint savings accounts which she had maintained with her son, Henry, for several years prior to his death. A few weeks before he died, Henry withdrew the entire proceeds from the accounts and transferred the funds to three new joint accounts: one in his own name jointly with his wife, Stella, and one such account with each of his two sons, Donald and Ronald. The defendants are Stella, Donald and Ronald, in whom the proceeds of the three accounts vested as surviving tenants upon Henry's death. From a judgment after a trial without a jury awarding her one half of the accounts as a joint tenant under section 675 of the Banking Law, plaintiff appeals.

At trial, plaintiff, an 86-year-old woman, established that the funds in the accounts consisted solely of money that she had deposited from her earnings. Her son Henry made no contributions. The bankbooks were continuously in plaintiff's possession except when Henry had them for the purpose of doing banking transactions for her.

Plaintiff's complaint alleges that she maintained the accounts with her son solely for her own convenience; and she sought to establish this fact at trial by testifying concerning her intention at the time of the initial transactions with the banks when she opened the joint accounts. The court precluded such testimony as barred by CPLR 4519. It also sustained objections under CPLR 4519 to testimony pertaining to the bank accounts by Stella, Ronald and Donald, all of whom were called as witnesses by plaintiff. With the proof thus curtailed, the court held that plaintiff had not overcome the presumption that in opening the accounts plaintiff had intended to create a joint tenancy with her son (Banking Law, § 675, subd [b]; see *Matter of Camarda,* 63 AD2d 837; *Matter of Coddington,* 56 AD2d 697).

At trial the court made a categorical ruling prohibiting testimony of any nature pertaining to plaintiff's intent in

opening the bank accounts and refused plaintiff's attorney's request for permission to place on the record through an offer of proof what plaintiff's testimony would be if she were allowed to testify. The record, therefore, contains no information as to the precise content or purport of the excluded evidence. In her brief on appeal, however, plaintiff asserts that if she had been permitted to do so she would have testified in substance that: "I went to the bank alone and put Henry's name on the accounts, I didn't discuss this with him, I did this solely so I could have him do my banking business for me in the future because I couldn't drive and I lived a good distance from the banks." It is claimed that the precluded testimony would have related solely to plaintiff's intent as a state of mind, an ultimate fact which was independent of and unrelated to any transaction or communication with the deceased or any conduct or language on his part.

The court's blanket prohibition of the proffered testimony was error. It is settled that intent as a state of mind is a fact which may be proved when it is material (see *O'Marr v McLean*, 228 App Div 19, 21). In *Epstein v Cuba* (25 AD2d 680), the court held that the defendants should have been permitted to testify as to their intent in creating joint savings accounts stating (pp 680-681): "While defendants' obvious interest may diminish the credit to be given their testimony, nevertheless it has long been the rule of this State that, whenever the intent or motive of a witness is a material issue in a cause, his testimony as to what that intent or motive was, while not conclusive, is competent and that it is reversible error to exclude it (*People* v. *Levan,* 295 N.Y. 26; *Noonan* v. *Luther,* 206 N.Y. 105; Richardson, Evidence [9th ed.], § 384, subd. L; 2 Wigmore, Evidence [3d ed.], § 581)." While it would have been error to have permitted plaintiff to establish her mental attitude "by proving as a basis for it a personal transaction or communication barred by [CPLR 4519]" (*O'Marr v McLean, supra,* pp 21-22), she should have been permitted to testify to the ultimate fact of her intent provided it appeared from her testimony that such fact was not derived from or dependent upon any conversation, transaction or communication with the deceased.

Contrary to the view expressed in the trial court's decision and adopted by the dissent, plaintiff does not seek to "do indirectly what she could not do directly" as in *Clift v Moses* (112 NY 426). There the ultimate fact sought to be established was a transaction with the deceased which was barred; i.e., that the deceased had delivered the notes to defendant upon payment. Defendant sought to prove this transaction indirectly by testifying not that the decedent had given him the canceled notes which, he claimed, had been destroyed but that the notes had been in his possession before decedent's death. Such proof was not permitted for the same reason that the testimony pertaining to services rendered in *Matter of O'Neil* (20 AD2d 741) was properly excluded: the evidence was offered as proof of a transaction or understanding with the deceased — a prohibited ultimate fact. Here, plaintiff's testimony as to her intent is offered solely as proof of that fact — her state of mind (a relevant and admissible fact standing alone) — not as evidence to establish a prohibited ultimate fact (i.e., a barred conversation or understanding with the deceased).

CPLR 4519, as interpreted here, has frustrated plaintiff's efforts to submit to the trier of facts the crucial item of proof upon which her case depends, and, we think, has in the present circumstances worked an unfairness. Results such as this have prompted the frequent criticism of the Dead Man's Statute in modern texts "as unfair in operation and unsound in principle * * * See, *e.g.*, 2 Wigmore, Evidence, §§ 578, 578a (3d ed. 1940); McCormick, Evidence, § 65 (1954); Report of the Committee on Improvements in the Law of Evidence, 63 A.B.A. Rep. 570, 581 (1938); Vanderbilt, Minimum Standards of Judicial Administration, 334 *et seq.* (1949); Morgan, *et al.,* the Law of Evidence — Some Proposals for its Reform 23 (Commonwealth Fund Report 1927); California Law Revision Commission, Recommendation and Study Relating to the Dead Man Statute (1957); Chadbourn, *History and Interpretation of the California Dead Man Statute: A Proposal for Liberalization,* 4 U.-C.L.A.L. Rev. 175 (1957)" (Second Preliminary Report of Advisory Committee on Practice and Procedure, 1958, p 268; NY Legis Doc, 1958, No. 13, p 268; see, also, Richardson, Evidence [Prince, 10th ed], § 396). While the New

York Legislature has not seen fit to repeal the statute, we believe the trend of recent decisions is to avoid any unnecessary expansion of its reach (see McLaughlin, Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 4519, 1964-1981 Supp Pamphlet, pp 260-261).

■ It was also error to exclude the testimony of Stella, Ronald and Donald, who were called as witnesses by plaintiff. As defendants, their interests were adverse to plaintiff and not adverse to the interests of the deceased from whom they derived their right to the accounts. They were not being examined as witnesses in their own interest or behalf "against the executor, administrator or survivor of a deceased person * * * or a person deriving his title or interest from, through or under a deceased person" (CPLR 4519; see *Matter of Anna,* 248 NY 421, 426).

The judgment should be reversed and a new trial granted.

DILLON, P. J. (dissenting in part). For the reasons stated by the majority, I agree that the trial court erred in excluding, on authority of CPLR 4519, the testimony of Stella, Ronald and Donald Brezinski. Since it cannot be determined on this record whether their testimony would have been relevant to the issue before the trial court, I agree that the case should be remitted.

I dissent from the majority rationale, however, concerning the competency of the testimony proffered by plaintiff. I would adopt in full the analysis of that issue as set forth in the well-reasoned decision of the trial court (BALIO, J.). He concluded, as do I, that "to permit this plaintiff to testify as to her intent would allow her to do indirectly what she cannot do directly" (cf. *Matter of Kleinberg v Heller,* 38 NY2d 836, 843 [FUCHSBERG, J., concurring]; see, also, *Matter of O'Neil,* 20 AD2d 741; *Matter of Marri,* 57 Misc 2d 793, 795-796).

SIMONS, MOULE and SCHNEPP, JJ., concur with HANCOCK, JR., J.; DILLON, P. J., dissents in part, in a memorandum.

Judgment unanimously reversed, without costs, and a new trial granted.