OPINION OF THE COURT
Lee L. Holzman, J.
In this SCPA 2103 discovery proceeding, the administratrix, decedent’s daughter, seeks to recover the sum of $280,000 plus interest from the respondents, decedent’s son, Howard, and his wife, Sheila. The parties agree that the funds which had been deposited into the accounts containing the names of decedent and Howard had initially belonged solely to the decedent and that Howard, prior to the decedent’s death on March 3, 1989, at the age of 90, had withdrawn $280,000 from the accounts and deposited the proceeds into accounts in the names of himself and Sheila. Decedent’s surviving distributees are his three children.
Petitioner contends that respondents are liable for the total amount of the withdrawals because the accounts were convenience accounts rather than true "joint accounts” (see, Banking Law § 675). In the alternative, petitioner argues that the accounts were the product of undue influence, fraud or lack of capacity. Should petitioner fail to prevail on any of these alternative theories, she seeks to recover one half of the amount of the withdrawals on the ground that Howard forfeited any survivorship interest that he might have had in the accounts by withdrawing the entire balance therefrom prior to decedent’s death without having obtained decedent’s consent or authorization.
Respondents contend that all of the accounts should be viewed as valid joint accounts and that it should be concluded that decedent expressly or impliedly approved of all of the withdrawals. Additionally, respondents contend that decedent *1036 was competent at all relevant times. Lastly, respondents assert that they are entitled to a setoff in excess of $95,000 for claims other than funeral expenses. They argue that these claims are valid and that excluding Howard’s testimony under CPLR 4519 would result in the provisions of CPLR 4519, as applied to the facts of this case, constituting an unconstitutional taking of property without due process. As required by CPLR 1012 (b), the Attorney-General was notified of the constitutional issue raised. However, he opted not to intervene but requested that a copy of the court’s decision be served upon him.
The parties stipulated that respondents are to be reimbursed for decedent’s funeral expenses in the sum of $5,883 and that all of the checks drawn on a Citibank checking account in the names of decedent and Howard were used for decedent’s benefit. The reason that the sum at issue is equal to the sum initially deposited in the accounts is that the interest was periodically withdrawn and used for decedent’s living expenses. However, petitioner rejects the respondents’ claims for a setoff for the following reasons: respondents have failed to meet the burden of proof required to establish the validity of the claims; the subject matter of these claims should be treated as gifts rather than obligations; respondents, in part, are seeking to recover interest lost on the funds which they wrongfully withdrew from decedent’s own funds; most, if not all, of the proof adduced with regard to these claims was from Howard’s own lips and is, therefore, barred under CPLR 4519; and a substantial portion of the claim is barred by the Statute of Limitations.
Employees of three of the depositories for the accounts at issue testified about the respective practices of their employers. The over-all thrust of their testimony was that the account in each institution was viewed as a joint account by the bank. Their testimony indicated that it was not unusual for the stamp marked "payable to either/or survivor” to be placed only on the passbook and not on the signature card even though the bank viewed the account as a joint account.
Howard testified in support of his claim of a setoff against the estate. Inasmuch as this was not a jury trial, with the consent of the parties the court reserved decision upon petitioner’s objections that most of Howard’s testimony had to be considered communications or transactions with the decedent and, consequently, inadmissible under CPLR 4519. Respon *1037 dents contend that they are entitled to be reimbursed in the sum of $43,823 for interest withdrawn from accounts in their names and deposited into checking accounts used for the benefit of decedent. Howard testified about these transactions and about the records he kept of the transactions. Howard also contended that, after he had withdrawn the $280,000 in dispute, it was deposited into money market accounts and certificates of deposit, that he regularly withdrew the interest totaling $22,789, and deposited this interest into checking accounts used for the decedent’s benefit, and that the sum of $23,400 in principal from these accounts was similarly withdrawn and deposited into checking accounts for decedent’s benefit. Lastly, Howard estimated that the cost for the gas and tolls to drive to his father’s apartment for a period of seven years and three months totaled $6,239 and that he should be reimbursed for this expenditure.
Of course, should it be concluded that respondents are entitled to the funds withdrawn from the accounts, there is no need to pass upon their claim for a setoff. The enactment of the predecessor of section 675 of the Banking Law relieved the surviving cotenant of an account containing the survivorship language required by the statute of the burden of establishing that the deceased cotenant intended to create a survivorship account (see, Matter of Creekmore, 1 NY2d 284). However, the ownership interest of the surviving cotenant may, nevertheless, be successfully attacked if it is established that the deceased depositor lacked the competency to form the intent required to make a valid gift or if it can be established that the account was the product of undue influence or fraud (Matter of Kleinberg v Heller, 38 NY2d 836, 840 [concurring opn]; Matter of Creekmore, supra; Haynos v Krupczyk, 14 AD2d 507).
Although it should be clear whether or not accounts were created in such a manner as to constitute "prima facie evidence” of the intent of the depositors "to vest title” in the survivor (Banking Law § 675 [b]), the courts are frequently required to determine this issue. As evidenced by the testimony of employees of three different banks, the banks’ practice of stamping survivorship language on the passbook or on other documents instead of on the signature cards must take the blame for much of this litigation. Hopefully, now that the Legislature has created a statutory "convenience” account (Banking Law § 678, L 1990, ch 436), the banking industry will create signature cards which clearly contain the required *1038 statutory language indicating whether the account is a "survivorship” account or a "convenience” account.
Although this court has previously expressed the opinion that some of the lower court’s interpretations of Matter of Fenelon (262 NY 308), the seminal case discussing the requirements to create the statutory presumption of a survivorship account, are more rigid than the Fenelon holding requires (see, Estate of Hofmann, NYLJ, June 29, 1989, at 26, col 3), this court is constrained to follow the recent appellate holdings that the statutory presumption of title vesting in the survivor does not arise unless the depositor has signed a signature card, or perhaps some other document, containing the necessary survivorship language (Matter of Coon, 148 AD2d 906, 907, citing Matter of Timoshevich, 133 AD2d 1011, 1012; Matter of Burns, 126 AD2d 809, 811). Although the absence of the statutory presumption does not preclude the surviving cotenant from establishing a right of survivorship, it does place the burden of proof upon the survivor to establish that the deceased depositor intended to create a survivorship account (Matter of Coon, supra, at 908, citing Matter of Thomas, 43 AD2d 446, 449).
Here, if the court had to determine whether the accounts at issue were "survivorship” accounts, it would conclude that the accounts in the Emigrant Savings Bank totaling $60,000 were joint accounts with right of survivorship and that all of the accounts in the other depositories were not. The signature card for the initial Emigrant account signed by the decedent was sufficient to constitute "prima facie evidence” of an intent on the part of the depositors to vest title in the survivor because it contained an "X” in the box next to the words "Joint (either/or survivor)” and no proof was adduced to rebut this evidence. With regard to the accounts in all of the other depositories, no signature card was presented which contained both the decedent’s signature and the required statutory language that it was payable to either "or the survivor of them” (Banking Law § 675 [a]) and, consequently, there is no statutory presumption as to survivorship. Moreover, no admissible credible proof was adduced to sustain respondent’s burden of otherwise proving that decedent intended to create survivorship accounts.
Nevertheless, under the facts herein, the result is the same regardless of whether the accounts created a "survivor-ship” interest or a tenancy in common. If the accounts were "survivorship” accounts, Howard destroyed his rights of survi *1039 vorship by dint of having withdrawn, without the decedent’s consent or ratification, more than his moiety interests while decedent was still alive and he would be liable to the estate for the excessive withdrawal of one half of the amount withdrawn inasmuch as he withdrew all of the funds on deposit. (Matter of Kleinberg v Heller, supra, at 843.) If the accounts did not create a joint tenancy with right of survivorship, they created a tenancy in common entitling Howard to one half of the sum on deposit (EPTL 6-2.2 [a]; Matter of Timoshevich, supra, at 1012, citing Matter of Chorney, 66 Misc 2d 963, 967).
The last issues to be decided are the extent to which Howard’s testimony and the documents offered in evidence in support of the respondents’ claims are admissible in light of petitioner’s CPLR 4519 objections and whether the admissible proof supports the claim. The proof offered in support of the claims essentially consisted of Howard’s testimony unsupported by any documents, Howard’s testimony as to banking transactions and expenditures for the decedent’s benefit supported by documents allegedly contemporaneously prepared by Howard, and Howard’s testimony on the same subject matter supported by records of bank accounts either in the names of respondents or the Citibank checking account in the names of decedent and Howard.
Inasmuch as Howard is claiming a right to the funds at issue against the administratrix, CPLR 4519 precludes him from testifying "in his own behalf * * * concerning a personal transaction or communication” between himself and the decedent. The words "personal transaction” and "communication” have been afforded a broad construction. Thus, a person who is disqualified under CPLR 4519 cannot testify about anything that was gleaned by any of this witness’s senses in the presence of the decedent nor can such testimony be used to establish directly or indirectly that a particular transaction occurred or did not occur between the decedent and the witness or that the decedent should or should not have had certain information or a particular impression (Richardson, Evidence § 402 [Prince 10th ed]).
Respondents are correct in asserting that, where funds were deposited in an account which was payable to either the depositor or her son, the court held that the depositor, in support of her claim that the son had wrongfully withdrawn all of the funds prior to his death, should have been permitted to testify that her "intent” in adding his name to the account was solely for her "convenience” (Brezinski v Brezinski, 84 *1040 AD2d 464). Regardless of whether permitting the depositor of the funds to testify as to her own intent can be considered as the commencement of a trend to whittle away at the exclusions required by CPLR 4519, it cannot be molded into the foundation for holding that CPLR 4519 permits an adverse party to testify about events which would be germane to decedent’s understanding as to whether certain payments made to or for the benefit of the decedent were either a gift or repayment of an obligation.
Here, Howard could not testify that he withdrew the accounts at issue and then delivered the funds to decedent (Matter of Wood, 52 NY2d 139). It would be a distinction without a difference to permit Howard to testify that he withdrew the funds at issue, then deposited the same amount to an account in his own name, and then either transferred them into accounts which contained decedent’s name or used that amount for decedent’s benefit. It follows that if Howard’s testimony as to these transactions is barred by CPLR 4519, his notebook, which purportedly reflects such transactions, as well as his testimony further explaining the transactions are also barred by CPLR 4519. Similarly, Howard’s testimony as to the number of times that he visited the decedent in support of the claim for gas and tolls is barred by CPLR 4519 (Matter of O’Neil, 20 AD2d 741). Without accepting Howard’s elaborations and explanations as to the various banking transactions for the decedent’s benefit as admissible, the passbooks in the names of the respondents as well as the Citibank checking account in the names of decedent and Howard are admissible for whatever probative value that they might have without any further elaboration other than the stipulation of the parties that the joint Citibank checking account was used for the decedent’s benefit.
Respondents contend that the exclusion of the above evidence prevents them from establishing a valid claim against the decedent and results in their being deprived of property without due process of law (Little v Streater, 452 US 1). Unquestionably, the overwhelming majority of commentators have criticized CPLR 4519 as being unfair to those who have a claim against a decedent because it frequently precludes the trier of the facts from having the opportunity to consider critical items of proof (Matter of Wood, supra, at 144; Brezinski v Brezinski, supra, at 467). Moreover, the exclusionary aspects of CPLR 4519 become doubly harsh where, as here, the claimant, rather than using the claim as a sword to *1041 extract a recovery from an estate, would like to use the claim as a shield to show that the transaction relied upon by the estate to support a recovery in its favor was not the only transaction between the decedent and the claimant. In those cases "in which the estate is seeking affirmative relief against the respondent” based upon a transaction between them, "the unfortunate death of the decedent” might very well be "a poor reason to render the other person to the transaction mute with the concomitant result that this person might incur liability without ever having had a meaningful day in court” (Matter of Dunbar, 139 Misc 2d 955, 956-957). Notwithstanding the conclusion of many commentators and some jurists that CPLR 4519, popularly known as the Dead Man’s Statute, should itself be buried on the ground that it is " 'unfair in operation and unsound in principle’ ” (Brezinski v Brezinski, supra, at 467), the function of the Legislature may not be usurped and the statute must be enforced as enacted in the absence of any constitutional infirmity.
In Little v Streater (supra), the Connecticut statute, which had been construed by the State court as not requiring the State to pay for the blood tests that could have exonerated the accused putative father in a paternity proceeding, was held to violate the due process guarantee of the Fourteenth Amendment as a result of a combination of factors, none of which are present in this matter. In Little v Streater (452 US, at 9), " 'State action’ * * * pervaded [the] case” because the State required the mother to institute the proceeding, the State provided the mother with an attorney to prosecute the action, the State would be the recipient of the monthly support payments and the Attorney-General of the State would have had to have been a party to any settlement. Moreover, the proceeding was found to have " 'quasi-criminal’ overtones” because, if the putative father is " 'found guilty ’ ”, his failure to comply with the ordered support payments "is punishable by imprisonment” (supra, at 10). The fact that the case involved the "creation of a parent-child relationship” raised it to the level of being "accorded * * * constitutional protection” (supra, at 13). Lastly, it was concluded that Connecticut’s unique statutory scheme was grossly unfair in that the mother, with the assistance of the State, made out a prima facie case against the putative father merely if she " 'continue[s] constant in her accusation’ ” (supra, at 10) against him while his testimony alone is insufficient to rebut her testimony, there is rarely if ever an eyewitness to the *1042 event, and the State denied the father the right to blood tests merely because he lacked the funds even though the tests have a "recognized capacity to definitively exclude a high percentage of falsely accused putative fathers” (supra, at 14).
In the instant matter there is no State action, the proceeding is purely civil and cannot be classified as "quasi-criminal”, the issues do not involve the creation of a parent-child relationship or any other issue which might cause a court to scrutinize whether the applicable statute passes constitutional muster, and New York has not created a statutory framework which permits the estate to make out a prima facie case by questionable testimony and then prevents the respondent from defending himself by adducing highly reliable proof merely because he lacks the funds. Not even the most ardent supporter of the abolition of the Dead Man’s Statute would contend that the testimony of an interested party about a transaction with a decedent is as trustworthy with regard to the claim of the witness as blood tests are on the issue of paternity.
In the case sub judice a reasonable person might very well conclude that the application of the provisions of CPLR 4519 are unwise and perhaps even unfair to the respondents in that the trier of the facts does not even have the opportunity to decide the credibility of their testimony. However, it cannot be concluded that the Legislature has run afoul of the Constitution because it has concluded that it is in the best interest of the people of this State to prevent parties with a financial interest from testifying about communications or transactions with decedents in support of their claims against decedents. The rationale for the legislation is that it not only prevents the presentation of false evidence in pending cases which the decedent cannot refute as a result of death having sealed decedent’s lips but it also acts as a watchdog at the doors of the courthouse to prevent false and frivolous claims from even being filed (see, Matter of Wood, supra, at 144). The Surrogates clearly have the most experience with the application of CPLR 4519. It is significant that the Surrogate’s Association, with the respectful dissent of this Judge and a few others, has consistently taken the position that the provisions of CPLR 4519 should be retained because, on balance, more "bad” evidence is kept out than "good” evidence excluded. For all of the foregoing reasons, the respondents’ constitutional attack as to the application of CPLR 4519 to the facts of this case is rejected.
*1043 Based upon the above findings of fact and conclusion of law, petitioner is entitled to recover from respondents the sum of $134,117 (the $140,000 improperly withdrawn from the accounts minus $5,883 reimbursement for funeral expenses) plus interest at the statutory rate from the date of decedent’s death. The Chief Clerk shall mail a copy of this decision to the Attorney-General.