[624 NYS2d 574]

CHRIS POSLOCK et al., Respondents, v TEACHERS' RETIREMENT BOARD OF THE TEACHERS' RETIREMENT SYSTEM et al., Defendants, and SANDIE NOWAK et al., Appellants.

First Department, April 4, 1995

## APPEARANCES OF COUNSEL

*Michael J. Crowley* of counsel *(Robert A. Faller* on the brief; *Gallagher Gosseen & Faller,* attorneys), for appellants.

*Bradley B. Davis* for respondents.

## OPINION OF THE COURT

Tom, J.

This appeal raises the issue of the applicability of the "Dead Man's Statute" (codified as CPLR 4519) to testimony regarding oral communications with a decedent concerning the distribution of the decedent's retirement death benefits and pension funds (Retirement Benefits).

Decedent Drew Poslock, who was employed as a New York City public school teacher, died on May 20, 1990 as the result of a cancerous condition. Plaintiffs Chris Poslock and Beryl Pakosh are decedent's brother and mother, respectively. Plaintiff Edward Dunne was decedent's friend and confidant as well as his former lover and roommate and was designated as decedent's executor. Decedent and Mr. Dunne had lived together for approximately 15 years, from 1968 until in or around 1983. The remaining plaintiffs are various family

members of the decedent. Defendant-appellant Sandie Nowak, also a New York City public school teacher, co-owned a cooperative apartment with Mr. Poslock and was his roommate at the time of his death. Defendant-appellant Alexander Nowak is the son of Sandie Nowak.

As a public school teacher, Mr. Poslock was entitled to certain death benefits payable to a designated beneficiary through the Teachers' Retirement System of the City of New York (the Retirement System). The Retirement System provided for certain additional benefits if the enrollee died prior to attaining eligibility for retirement. Pursuant to a Designation of Beneficiary form dated December 15, 1977, the decedent had designated Mr. Dunne as his sole beneficiary.

In or around 1983, Mr. Poslock moved in with Ms. Nowak, although he maintained a close personal relationship with Mr. Dunne. In April 1990, Mr. Poslock was diagnosed with lung cancer, which shortly thereafter metastasized to his liver. Mr. Poslock subsequently filed a second Designation of Beneficiary form with the Retirement System, dated May 10, 1990, replacing Mr. Dunne with Ms. Nowak as the sole beneficiary. Mr. Poslock entered the hospital approximately one week later and died, while still a patient, on May 29, 1990.

The central issue on appeal, and a bitter point of contention between the parties, is whether decedent, during his final days in the hospital, executed a third Designation of Beneficiary form in order to divide his Retirement Benefits among his family, Mr. Dunne and Ms. Nowak. Plaintiffs contend that the third and last Designation, which allegedly added plaintiffs as beneficiaries to decedent's Retirement Benefits, was sent to the Retirement System shortly before Poslock's death.

Although the Retirement System has records indicating that something was received by registered mail in connection with Mr. Poslock's file on May 25, 1990, the file does not contain a copy of the third Designation of Beneficiary form and there is no log or memorandum indicating what item was received on that date. As a result, the Retirement System acted upon the Designation form dated May 10, 1990, which named Ms. Nowak as the decedent's sole beneficiary. As a result, Ms. Nowak was to receive the entire portion of the decedent's estate that passed through the will as well as his entire Retirement Benefit. Upon Ms. Nowak's denial of any knowledge of the missing and allegedly final Designation of Beneficiary form, this action was commenced by plaintiffs.

During the trial of this action by a jury, plaintiffs sought to introduce into evidence oral communications with decedent, allegedly made during the time of his hospitalization, to prove their entitlement as beneficiaries of decedent's Retirement Benefits. Defendants voiced objections to the communications, as being in violation of the Dead Man's Statute and as constituting inadmissible hearsay. The IAS Court, however, held the testimony to be permissible pursuant to the ruling in *Ward v New York Life Ins. Co.* (225 NY 314).

Mr. Dunne, who was plaintiffs' main witness, and whose testimony is the focal point of this appeal, testified of his close personal relationship with the decedent over many years and that he had several discussions with decedent concerning the distribution of his assets just prior to his death. The decedent allegedly told Mr. Dunne just before an operative procedure that he did not have a will and that he had his share of the cooperative he occupied with Ms. Nowak, an insurance plan, a pension plan and a house in the Poconos. Mr. Dunne maintained that decedent indicated he wanted to leave his share of the cooperative to Ms. Nowak and divide the pension plan and insurance policy among various family members. Mr. Dunne wrote out a document setting forth Mr. Poslock's bequests which provided for various family members, Mr. Dunne and Ms. Nowak, and decedent signed it.

After decedent returned from surgery, Mr. Dunne asserted that he and decedent had additional discussions concerning the decedent's affairs and Mr. Dunne thereafter returned home and typed a second document which essentially tracks the bequests set forth in the first document. Mr. Dunne testified that when he presented it to decedent the following day, decedent explicitly noted his desire to provide for family members.

The decedent then allegedly informed Mr. Dunne that he had previously changed the sole beneficiary of his Retirement Benefits to Ms. Nowak, which he believed to be approximately $50,000, or one year's salary. Mr. Dunne asserted that he explained to decedent that he could provide for his family and friends out of the pension fund, at which point decedent told Mr. Dunne to obtain another Designation of Beneficiary form and to inquire as to the value of the benefits the beneficiaries would receive. It was at this juncture that decedent was finally made aware of the true worth of the benefits.

Mr. Dunne further testified that he then called a notary

who came to the hospital to witness decedent's signature on the Designation of Beneficiary form. After decedent's signature was notarized, Mr. Dunne allegedly left with the document and mailed it to the Retirement System with return receipt requested. The receipt of mailing which identified Mr. Dunne as the sender was admitted into evidence with no objection. Mr. Dunne then testified that pursuant to decedent's instructions, he drafted a third version of the will, which was eventually probated, specifically leaving decedent's interest in the cooperative apartment, as well as the remainder of the estate, to Ms. Nowak.

Plaintiffs claim that Mr. Poslock's reasons for changing his will and Designation of Beneficiary for the Retirement System Benefits were twofold: Mr. Poslock feared that if his share of the cooperative passed through the will to strangers, Ms. Nowak would be forced to sell the apartment; and Mr. Poslock had been unaware that the Retirement Benefits were worth as much as $250,000, which he felt would best be served if divided among his family and friends.

Mr. Dunne also testified as to conversations that he had with Ms. Nowak prior to decedent's death in which he informed Ms. Nowak that there had been a change in the beneficiary regarding the retirement funds, the reasons for the change, and that she should speak with Mr. Poslock. A few days later, Ms. Nowak allegedly requested a copy of the final Designation of Beneficiary form. Mr. Dunne, who purportedly had two additional executed copies, supplied her with a signed copy, which was never returned. Mr. Dunne testified that Ms. Nowak, after having spoken to decedent, told him that decedent would not change his mind with regard to the latest change of beneficiaries.

After the death of Mr. Poslock, Mr. Dunne went to the Retirement System's office the following January to inquire as to the delay in the processing of benefit payments and was informed that Ms. Nowak, the only beneficiary listed, had already been contacted. In the time that passed between Mr. Poslock's death and his visit to the Retirement System's office, Mr. Dunne testified that he lost the only remaining signed copy of the final Designation of Beneficiary form, although he retained an unsigned copy.

Plaintiff Chris Poslock testified that approximately one week before his brother's death, the decedent telephoned him to discuss the various family members and friends who would

be the beneficiaries of the retirement fund. Chris Poslock stated that he spoke with Ms. Nowak concerning the foregoing and that "she appeared shocked." Decedent's mother stated that decedent had told her the Retirement Benefits would be shared among his family and friends.

The notary testified that he recalled decedent had signed a multipage document on each page, which signatures he then notarized. The notary also recalled decedent and Mr. Dunne discussing several names, and that the form executed by decedent was for a teachers retirement fund with the names of some of the individuals thereon having the same surname as the decedent.

After plaintiffs rested, defendants called Ms. Nowak, who denied having received a copy of the Designation of Beneficiary form from Mr. Dunne or having seen any such document; denied having had any conversations with Mr. Dunne regarding such a form prior to Mr. Poslock's death; denied having discussed the matter with either Mr. Poslock's brother or mother, and, to the extent that their testimony differed from hers, they were lying. Ms. Nowak also acknowledged that the will left the decedent's entire estate to her and that she brought a petition to have Mr. Dunne removed as executor so she could become executrix, which was resolved, in her favor, by a Stipulation of Settlement (apparently, Mr. Dunne's brother, Franklin Dunne, was named as alternative executor in the will and he, too, resigned so that Ms. Nowak could become executrix).

The jury subsequently returned a verdict in favor of plaintiffs, having found plaintiffs' testimony credible and that decedent executed a Designation of Beneficiary form which was properly prepared, executed, notarized and filed, and judgment was entered in favor of plaintiffs. Defendants appeal, asserting that the testimony of Mr. Dunne, Chris Poslock and Beryl Pakosh was inadmissible pursuant to the Dead Man's Statute and as hearsay.

■ The purpose of the Dead Man's Statute is to prevent interested persons from asserting an adverse claim to title based upon alleged oral dealings with an individual no longer able to refute those claims *(Ward v Kovacs,* 55 AD2d 391, 403; *Endervelt v Slade,* 162 Misc 2d 975, 978; 2 Wigmore, Evidence § 578 [Chadbourn rev 1979]). Such testimony is deemed unreliable as a matter of law (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4519:1, at 165).

CPLR 4519, the "Dead Man's Statute," as currently embodied in this State, provides in relevant part: "Upon the trial of an action * * * a party or a person interested in the event * * * shall not be examined as a witness in his own behalf or interest * * * against the executor, administrator or survivor of a deceased person * * * or a person deriving his title or interest from, through or under a deceased person * * * concerning a personal transaction or communication between the witness and the deceased person".

In the matter before us, there can be no dispute that Mr. Dunne, Chris Poslock and Beryl Pakosh are all individuals "interested in the event" and that their testimony proffered at trial represented a communication with the decedent. Barring an exception then, their testimony should have been deemed inadmissible by the IAS Court.

Plaintiffs' argument herein, which was adopted by the IAS Court, arises from the holding of the Court of Appeals in *Ward v New York Life Ins. Co. (supra).* In *Ward,* the dispute involved the proceeds of a life insurance policy, which the decedent's wife claimed had been promised her pursuant to a parol assignment of the proceeds in order to induce her to lend the decedent money. The Court held that because the wife would receive the money from the insurance company and not from the insured who allegedly designated her, no title or interest is derived thereby from a transaction or communication with the decedent as the money did not come into existence until the husband's death.

Plaintiffs seek to analogize the foregoing to the facts of this case and contend that because Mr. Poslock had no right to the Retirement Benefits during his lifetime, they, like the insurance proceeds, do not fall under the proscription of CPLR 4519. As a result, plaintiffs assert that the testimony of Mr. Dunne, Chris Poslock and Beryl Pakosh was correctly ruled admissible.

It is the fundamental difference in the characteristics between an ordinary life insurance policy and the Teachers' Retirement System which renders plaintiffs' analogy unsound and their testimony inadmissible. In *Ward (supra),* the Court's ruling was predicated solely upon an ordinary life insurance policy. In the matter at hand, the decedent was a vested member of the New York City Teachers' Retirement System and, as such, had the right to invade the contributions he had made to the System (Administrative Code of City of NY § 13-

540) and had the option to select the funds to which his contributions would be directed (Administrative Code § 13-568). Further, had no beneficiary been selected, the death benefit would have been paid into the decedent's estate (Administrative Code § 13-542) and, if Mr. Poslock had terminated or resigned his membership in the retirement association, he would have been "paid forthwith the full amount of [his] accumulated deductions" (Administrative Code § 13-541). It is our view that all of the foregoing distinctions render the *Ward* case, and the insurance policy on which it is based, inapplicable.

We also note that the United States Supreme Court in *Nachman Corp. v Pension Benefit Guar. Corp.* (446 US 359, *reh denied* 448 US 908), although decided in a different context, identifies future pension benefits, once vested, as a property right. The New York Court of Appeals, again in a different context, has found that pension benefits of individuals in the Teachers' Retirement System are "marital property" under the Domestic Relations Law *(Kaplan v Kaplan,* 82 NY2d 300, 305-306). As a property right, the benefits are governed by the restrictions set forth in CPLR 4519.

Case law which addresses this particular species of property is virtually nonexistent, although *Robillard v Booth* (271 App Div 878) is directly on point. In *Robillard,* the Appellate Division, Second Department, found, much as we do here, that the *Ward* Court heavily stressed the fact that the property or insurance proceeds involved never belonged to the deceased and did not come into existence until his death, whereas, in the case of the Retirement System pension, the accumulated fund came into existence during the lifetime of the deceased and had many characteristics which distinguished it from the *Ward* policy.

The Court in *Robillard* also found that the opinion of the Court of Appeals in *Ward:* "rested by analogy, to a certain extent, upon the situation created by a power of appointment * * *. When a surrogate, following the language in the *Ward* opinion * * * applied the decision to the case of the donee under a power of appointment * * * the latter decision was immediately followed by the adoption by the Legislature of an amendment to section 347 of the Civil Practice Act [the predecessor to CPLR 4519] * * * changing the rule in the case of the donee of such a power. While this amendment does not specifically refer to a * * * retirement system, obviously the Legislature * * * indicated its disagreement with the princi-

ple of the alleged analogy so far as a power of appointment was concerned." *(Robillard v Booth, supra,* at 879.) The Court concluded that the legislative action substantially affected the weight of the decision in the *Ward* case.

In view of the foregoing analysis of the *Robillard* Court and the numerous aspects which differentiate the Retirement System Benefits from a basic life insurance policy, we conclude that the *Ward* analysis is inapplicable to this matter and the plaintiffs' testimony should not have been admitted.

In reaching this decision, we are mindful that the Dead Man's Statute is a last vestige of the common-law, general rule which rendered all interested persons and parties incompetent to testify *(Matter of Wood,* 52 NY2d 139, 143-144; 2 Wigmore, Evidence, *op. cit.).* It has been criticized throughout its existence as " 'unfair in operation and unsound in principle' " *(Brezinski v Brezinski,* 84 AD2d 464, 467, quoting 2d Prelim Report of Advisory Comm on Prac & Pro, 1958, at 268), and, "in the words of Bentham, a 'blind and brainless' technique" (1 McCormick, Evidence § 65, at 251 [4th ed 1992]) as it frequently precludes the trier of fact from considering critical evidence *(see, Matter of Wood, supra,* at 144; *Brezinski v Brezinski, supra,* at 467; Richardson, Evidence § 396 [Prince 10th ed]).* The matter before us is one example of this rigid and inflexible rule which excludes material and pertinent evidence from the trier of facts relevant to the determination of decedent's intent regarding his designation of beneficiaries for the retirement funds. This may very well have led to an unjust result which the jury found contrary to the decedent's wishes.

We do restrict our holding herein to the Retirement System Benefit Reserve Funds which, admittedly, make up the majority of the total value of the Retirement Benefits. The remaining component of the benefit package is a $50,000 New York City Group Term Life Insurance Policy which appears to have had no cash value, and was uninvadable, during the lifetime of the decedent. As a result, we conclude that plaintiffs' testimony, with regard to the proceeds of that policy, was not barred by the Dead Man's Statute pursuant to the Court of

---

* The disqualification rule has been abandoned in England and by the Federal courts (Fed Rules Evid, rule 601 *et seq.),* except where State law must be applied, and some States have liberalized the restriction to allow a survivor's testimony if it is corroborated by other evidence or where the Trial Judge deems it necessary to prevent injustice (1 McCormick, Evidence § 65, at 251-252 [4th ed 1992]).

Appeals holding in *Ward (supra)*. Nor was plaintiffs' testimony inadmissible as it showed the decedent's state of mind at the time the statements were made, specifically, his desire to provide for his family and friends *(see, Matter of Putnam,* 257 NY 140; Richardson, Evidence § 288 [Prince 10th ed]).

We also find no merit in the plaintiffs' contention that the IAS Court erred when it refused to admit the document, offered by plaintiffs, which was allegedly prepared by Mr. Dunne and which purportedly represented the distribution percentages as relayed to Mr. Dunne by the decedent. Pursuant to a long-recognized exception to the best evidence rule, secondary evidence may be admitted to prove the contents of an unproduced original if the unavailability of the primary evidence has been sufficiently explained *(Schozer v William Penn Life Ins. Co.,* 84 NY2d 639, 644; *Trombley v Seligman,* 191 NY 400, 403). The more important the document to the final outcome of the case, the stricter the requirement that an evidentiary foundation be established demonstrating the loss *(Schozer v William Penn Life Ins. Co., supra,* at 644; *People v Dolan,* 186 NY 4, 13).

At trial, there was no certification that the copy was a conformed copy; it was unsigned, undated and never notarized and its authenticity relies entirely on the testimony of Mr. Dunne. Further, there was no evidence presented whatsoever concerning why Mr. Dunne's copy of the original was unavailable or what, if any, search was conducted to locate such an important document.

Accordingly, the judgment of the Supreme Court, New York County (William Davis, J.), entered on or about April 29, 1994, which, after a jury trial, directed the distribution of Retirement Benefits to plaintiffs and others, is unanimously modified, on the law, to the extent of directing that the distribution of decedent's Retirement Benefits less the value of decedent's New York City Group Term Life Insurance Policy be made to defendant-appellant Sandie Nowak, and otherwise affirmed, without costs.

ROSENBERGER, J. P., WALLACH and ASCH, JJ., concur.

Judgment, Supreme Court, New York County, entered on or about April 29, 1994, unanimously modified, on the law, to the extent of directing that the distribution of decedent's Retirement Benefits less the value of decedent's New York City Group Term Life Insurance Policy be made to defendant-appellant Sandie Nowak, and otherwise affirmed, without costs.