in the sum of $750 are being claimed against him by the banks. * '* * That said plaintiff and plaintiff's alleged assignors gave this defendant advice as to the law * * * which the Court of Appeals has declared to be erroneous, and that by reason thereof this defendant was caused the damages as aforesaid."

When, after the opening of a default suffered by the defendant, the cause finally came up for trial, the plaintiff moved for and was granted judgment upon the pleadings. Why not? The employment, rendition of the services, their value, and the expenditures not being denied, nothing but judgment remained, unless a defense could be spelled out of the allegations in the answer. That can hardly be. The first paragraph contains a bootless denial of a legal implication, asserts an understanding that the plaintiff and assignor were to work without a retainer—the preliminary payment to keep them from the other side (In re Schaller, 10 Daly, 57)—and that they were to await a collection from the banks, without saying there had been no collections, or that proceedings therefor either had failed or were unfinished. If, as now intimated upon the brief, the language used means that the plaintiff undertook to work for nothing because the defendant touted for him, or to ask nothing unless he succeeded and got from the parties he sued, that could and should have been inserted by the defendant, a Philadelphia lawyer of pretensions, who drew and verified the answer, or by his attorney of record, an attorney of known experience and known practice. As it stands, it is meaningless, or means nothing to the point. The assertions of abandonment in paragraph 2 is not, so far as appears, an allegation that the plaintiff unjustifiably ceased from his labors. Pickard v. Pickard, 83 Hun, 340, 341, 31 N. Y. Supp. 987. Indeed, it looks as if he stopped only when he had nothing more to do, and it only remained for his opponents to enter up final judgments. Paragraph 3 contains possibly a bit of evidence, and the fourth expresses the opinion of a lawyer, without a statement of facts to make it a litigated issue. No evidence was offered under the counterclaim, nor was attention called to it otherwise.

Perhaps the learned justice might have found, had he been minded, authority for allowing at the trial an amendment which would have contradicted the answer as drawn and verified, but he wisely denied a motion therefor. The judgment should be affirmed.

Judgment affirmed, with costs.

FREEDMAN, P. J., concurs in result. GILDERSLEEVE, J., concurs.

---

(99 App. Div. 81)

In re BLAIR.

In re HILLER'S ESTATE.

(Supreme Court, Appellate Division, Third Department. November 16, 1904.)

1. WITNESSES — DECEDENT'S ESTATES — CLAIMS — TESTIMONY OF CLAIMANT — TRANSACTION WITH DECEDENT.

On a claim against the estate of a decedent on a note alleged to have been given by her to claimant, testimony of claimant as to where he kept the note, and where the note was on the day of deceased's death, and

that he showed the note in question to a certain third person, was incompetent, under Code Civ. Proc. § 829, as involving, in an indirect way, testimony as to a personal transaction with deceased.

2. SAME—TRANSACTION WITH DECEDENT—WAIVER OF PRIVILEGE.
   Where, on a claim against the estate of a decedent to recover on a note alleged to have been given by her to claimant, contestant, early in the trial, offered to waive Code Civ. Proc. § 829, as to personal transactions between the decedent and claimant, but the offer was not accepted, there was no waiver of the statute, binding on the contestant.

3. SAME—EVIDENCE AS TO PERSONAL TRANSACTION—PREJUDICIAL ERROR.
   Where, on a claim against the estate of a decedent to recover on a note alleged to have been given by her to claimant, claimant was erroneously permitted, in violation of Code Civ. Proc. § 829, to testify as to where he kept the note, and that he had once showed the note to a third person, the error could not be regarded as harmless, two of the witnesses called by claimant, in support of his claim, to testify to seeing the note, having been successfully impeached, and the only other witness, except claimant, who swore that claimant had the note, while not impeached, being discredited by his cross-examination.

Appeal from Surrogate's Court, Chenango County.

Final accounting of Louis P. Blair, as administrator of Phebe A. Hiller, deceased. From so much of the decree as adjudged that a certain note was a valid claim against the estate in favor of Louis P. Blair, Josephine H. Dunning appeals. Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

H. C. & V. D. Stratton, for appellant.
M. F. Porter and Henry R. Follett, for respondent.

CHESTER, J. Upon the final settlement of his accounts, the administrator presented a personal claim against the estate of his decedent, Phebe A. Hiller, for a considerable amount for professional services as a physician rendered to her, and also for the amount of several promissory notes claimed by him to have been made by her and delivered to him. Josephine H. Dunning, sister of the decedent, and her sole next of kin, filed objections to the account. The learned surrogate has decided in favor of the claimant upon his claim for professional services and upon all the notes, and from a part of the judgment entered upon such decision this appeal is taken. The only question presented for review by the appeal is as to the correctness of that part of the decree adjudging that a note for $2,275, bearing date October 15, 1894, less certain small payments thereon, is a valid claim against the estate of the decedent in favor of the claimant.

The claimant was sworn in his own behalf in support of his claim. In referring to the note in question and the other notes, the question was asked.: "Q. Where did you keep your notes?" This was objected to as involving a personal transaction with a deceased person, and incompetent under section 829 of the Code of Civil Procedure, and that the witness was incompetent to testify. The objection was overruled, and an exception was taken. The witness replied:

"I kept them in the bank, Chenango National Bank, First National Bank of Oxford, and a long black pocketbook about twelve or thirteen inches long,

sometimes in my safe, sometimes in cupboard, and under my bookcase and desk in sitting room."

Again the witness was asked:

"Q. At the time of Phebe Hiller's death, that day, where were these notes that have been put in evidence?"

The same objection was made, which was overruled and an exception taken, and the witness answered:

"In my black pocketbook, in the safe in my office; every note, including the large note."

He was also allowed to state, under the same objection and exception, that he showed the note in question to one John Banks, and also that a Miss Bliven made a list of the notes, including the one in question.

This testimony was clearly incompetent as involving in an indirect way a personal transaction with the deceased, namely, that she had delivered the note to the claimant. It was held in Clift v. Moses, 112 N. Y. 435, 20 N. E. 392, that section 829 of the Code of Civil Procedure prohibits not only direct testimony of the survivor that a personal transaction took place between him and the deceased, and what occurred between the parties, but also every attempt by indirection to prove the same thing. It was said by Andrews, J., in that case:

"The statute cannot be evaded by framing a question which, on its face, relates to an independent fact, when it is disclosed by other evidence that the fact had its origin in, and directly resulted from, a personal transaction."

The doctrine of that case, in condemning testimony of a like character to that admitted here, was affirmed and applied in the recent case of Richardson v. Emmett, 170 N. Y. 412, 63 N. E. 440. It has also been applied in this department in the earlier case of Viall v. Leavens, 39 Hun, 291.

It is urged, however, that the appellant waived the provisions of section 829 of the Code of Civil Procedure, and that, even if the evidence was improperly received, it was cumulative, and therefore harmless error. It is true that the record shows that early in the trial the contestant offered "to waive section 829 of the Code of Civil Procedure as to personal transactions between Phebe A. Hiller and Dr. Blair down to and including the 15th day of October, 1894, so far as such transactions relate to the making, giving, and execution of the note in question." But that offer was not accepted, and the claimant immediately rested his case, without giving any testimony involving the personal transactions referred to in the offer. Later in the trial the claimant was recalled, and at the first opportunity after his recall, when the incompetent testimony was asked for, the objection was promptly made and overruled, and the testimony above referred to was received. The ruling was that the testimony was competent, not that the provisions of the Code of Civil Procedure had been waived. This, as we have seen, was error. We think that notwithstanding the offer to waive, which was not accepted, the appellant has not deprived herself of the benefit of her exceptions.

Nor can we say that the error committed in receiving this testi-

mony was harmless. Two of the witnesses called by the claimant in support of his claim, and who testified to seeing the note in the claimant's possession, were successfully impeached by witnesses called for the contestant. The only other witness except the claimant who swore that the latter had the note in his possession, while not impeached by direct evidence, was so discredited by his cross-examination as to his recollection of seeing the claimant have this identical note in his possession five years before he was sworn that we cannot say, in a case where, as here, the law requires the claim against an estate to be supported by clear and satisfactory evidence, that the testimony erroneously received was harmless. On the contrary, we think the appellant was necessarily prejudiced thereby.

That part of the decree appealed from should be reversed, and a new trial granted, with costs to the appellant, against the respondent personally, to abide the event. All concur.

