In the Matter of the Accounting of JOHN L. ERDMANN, as Administrator C. T. A. of Ludwig Erdmann, Deceased.

Surrogate's Court, Richmond County, June 8, 1950.

*John L. Erdmann,* as administrator *c. t. a.,* in person.

*C. Ernest Smith* for Joseph Erdmann and another, objectants.

BOYLAN, S.   This is a contested accounting proceeding. Margaret Schubert, daughter of decedent, filed a claim in the sum of $1,500 based upon two promissory notes, totaling that amount, against both of which the Statute of Limitations had apparently run.   The administrator rejected the claim and at the hearing the claimant contended that the debt had been revived by a subsequent written promise to pay, and that her attorney spoke to her about the Statute of Limitations a month after her father died.   A brother of the claimant, Joseph Erdmann, testified that, while his father was in the hospital and two days before he died (October 3, 1946) he gave him a bank book entitled "Ludwig Erdmann — Mary Erdmann, either to draw or survivor" and said in substance, "Take this and pay Margaret what I owe her; the rest is yours."   At the time he allegedly delivered the bank book to Joseph.   The claimant maintains that the bank book, together with the bank signature card, are a sufficient writing within the meaning of section 59 of the Civil Practice Act to revive the debt.

The son, John Erdmann, the administrator, is a stepbrother to Margaret and Joseph, all three of whom were children of the decedent, Margaret and Joseph being children by decedent's

first wife and John, a son by decedent's second wife. The decedent was a patient in St. Vincent's Hospital for five or six weeks before he died and at the time of the alleged delivery of the bank book, his wife, (the mother of John) to whom he had been married for many many years was a patient in the same hospital and died three months after the death of her husband. During all of the years of their marriage, the deceased and his second wife worked together in the various businesses owned by him and apparently earned all or a great portion of the assets which we find in the estates of both.

A friendly relationship exists between Joseph and Margaret but the feeling of both toward John and of John toward them is unfriendly. At the time of the transaction claimed by Joseph, the claimant lived at 235th Street, Riverdale, New York. If her father desired to pay her $1,500 he could have communicated with her and have perfected a direct transaction rather than the one claimed. Robert Schubert, son of the claimant, Margaret, testified that in January, 1946, his grandfather visited with him and his parents for about a week and that during that period decedent said he owed $1,500 to the claimant, but he did not want to pay it back because William Schubert, the husband of the claimant, had a propensity to gamble in the stock market, but that Margaret, his daughter, could have the money any time she wanted it. William Schubert testified to substantially the same effect and further stated that in January, 1946, the decedent promised to purchase an automobile for his grandson upon his release from the armed services. The car was never purchased and apparently no effort was ever made to have the decedent perform these promises.

There is no reason acceptable to the court why the father should have given the balance of the money in the bank to Joseph, to the exclusion of his wife and his other two children. At the time of the alleged delivery of the book Mrs. Ludwig Erdmann was suffering from her last illness. There was no telling how long she might live and it seems incredible that her husband, with whom she apparently lived happily for many years, would make a gift of practically the entire balance of his personal estate and leave her without any quick or ready assets.

John Erdmann, the administrator *c. t. a.*, testified that on December 29, 1946, the day his mother died, he was speaking to his half-brother Joseph about probating their father's will, and that Joseph said he was not interested in any part of the estate; that he wanted nothing from anybody; that he refused

to talk about the bank book or the alleged gift and stated, "I lied before and I can lie again." Margaret and Joseph kept all information regarding the claim of the alleged gift from the administrator, John, until it became urgent that they speak.

The claimant knew that her father was seriously ill in the hospital for five or six weeks before his death, and there is no evidence that she made any effort during this period to collect the amount of her claim. If it is argued that an effort was made to gain payment but that claimant was not competent to so testify, then why didn't the decedent have the transaction with Margaret rather than Joseph, and why wasn't the claim paid? Joseph Erdmann also testified that he had a conversation with the decedent at about Easter time 1946, and that decedent said he owed Margaret $1,500 and that she could have it whenever she wanted it. This was approximately six months before decedent's death, and again, why didn't Margaret make an effort to accomplish payment before her father's death? If she did make such an effort, the court is at a loss to know why it wasn't made, other than in the manner claimed by Joseph.

Under all of the circumstances, the court finds as a matter of fact that the transaction claimed by Joseph and alleged to have taken place at St. Vincent's Hospital two days before decedent's death, is incredible and should be rejected.

This finding is sufficient upon which to rest the court's determination, but there is an interesting question of law which might be dwelt upon. Toward the close of the case, claimant's attorney called her to the stand and propounded the following question: "Mrs. Schubert, did you ever receive payment in the sum of Fifteen Hundred ($1500) Dollars for these two notes?" The admissibility of this proof was questioned. A colloquy followed between the court and counsel wherein it was urged that, since the answer would be in the negative, it did not violate the provisions of section 347 of the Civil Practice Act. The material part of that section, so far as the question here involved is concerned, reads as follows: "Upon the trial of an action or the hearing upon the merits of a special proceeding, a party or person interested * * * shall not be examined as a witness in his own behalf * * * against the * * * administrator * * * concerning a personal transaction or communication between the witness and the deceased person * * *." One might plausibly argue that the words "concerning a personal transaction or communication between

the witness and the deceased '' assume that such a transaction took place and have no reference to the absence of any such transaction or communication. In other words, the section means a positive transaction or communication and not the negative or absence of any such transaction or communication.

When we look to the reasons for the existence of section 347, we find that the arguments set forth for the admissibility of the negative answer are untenable. The purpose of the section is to limit the introduction of testimony of a party or interested person in an action or proceeding against the administrator of a deceased person. In such an action or proceeding fairness requires that one party should not be permitted to give his version of a transaction or communication where the adversary in the controversy is dead; where death silences one, the law will silence the other. The purpose of the statute is to put both parties on equality. If the negative answer of the claimant were permitted, it means that the decedent never paid the notes. It might well be that if he were alive he would vigorously deny this.

Where a party is precluded under section 347 from testifying that a certain transaction or communication occurred, he is likewise precluded from testifying that such a transaction or communication did not occur. In other words the section precludes an interested witness from testifying not only to the positive of a transaction or communication, but also to the negative thereof. The court is therefore of the opinion that the question propounded was incompetent and inadmissible under section 347 of the Civil Practice Act, and that the answer should be stricken out.

Objection No. 1 is sustained to the extent that the word '' exacted '' is stricken out, since the attorney mentioned is not a party to this proceeding.

The claim of Margaret Schubert (Objection No. 2, Item D-3 of the account) for $1,500 is dismissed on the merits for the reasons herein stated.

Objection No. 3 was withdrawn at the hearing.

The claim of Joseph Erdmann for the balance of the account in excess of $1,500, based on the alleged gift to him in that amount, is dismissed on the merits for the reasons stated.

The demand that the administrator *c. t. a.* be surcharged with the annual rental value of premises 277 Lamberts Lane, Staten Island, New York, is denied since the property was owned by the decedent and his second wife as tenants by the

entirety. Upon his death it passed to her and upon her death it passed to John Erdmann under the terms and provisions of her will.

Enter decree judicially settling the account in accordance herewith.