*977 OPINION OF THE COURT
Edward H. Lehner, J.
This motion in limine involves two issues: (1) the application of the Dead Man’s Statute to testimony that plaintiffs seek to introduce concerning their interactions with the deceased Aleck Slade, and (2) which party in an alleged attorney-client relationship bears the burden of proving when the two-year discovery period of CPLR 203 (g) commenced to run.
These combined actions, instituted in 1988 and 1989, involve intrafamily disputes concerning allegations, inter alla, that in 1972, 1973 and 1977 the deceased Aleck Slade, who was plaintiff Belle Endervelt’s brother and allegedly legal counsel with respect to most of the transactions complained of, defrauded her and her children of their interests, as distributees of the estate of her husband David, in properties allegedly owned by David.
A decision denying defendants’ motion to dismiss these actions as time barred was affirmed by the Appellate Division which held (194 AD2d 305) that "triable issues of fact exist with respect to the time plaintiffs discovered or should, with due diligence, reasonably have discovered the alleged fraud”. The Court also held that "a triable issue of fact exists as to whether or not defendants should be estopped from asserting the statute of limitations because of the attorney-client relationship which existed between plaintiff Belle Endervelt and her brother Aleck Slade”.
Defendants contend that because of the Dead Man’s Statute (CPLR 4519), plaintiffs will be unable at trial to obtain the benefit of the discovery extension of CPLR 203 (g), or establish an estoppel against the application of the Statute of Limitations. Defendants state that the applicability of CPLR 4519 was not raised on the aforesaid motion for dismissal because in Phillips v Kantor & Co. (31 NY2d 307 [1972]), the Court of Appeals interpreted the section as allowing evidence not admissible thereunder at trial to be used to defeat a motion for summary judgment. That ruling was based on the grounds that the section only refers to the use of the testimony on "the trial of an action”, and further that the protection provided therein could conceivably be waived at trial. While I agree with the position of the dissent in that case, that the effect of *978 the section should properly be determined on a motion for summary judgment, the rule of the Phillips case has never been overturned (see, e.g., Tancredi v Mannino, 75 AD2d 579 [2d Dept 1980]).
Although there is little of significance presented to the court today that was not available to the parties at the time of the making of the prior motion, all counsel have now requested by this in limine application that the foregoing issues be decided prior to the commencement of jury selection for a trial in which it is expected that over 1,000 exhibits will be offered in evidence.

The Dead Man's Statute

*

CPLR 4519 precludes interested parties from testifying in their own behalf against the interest of a decedent as to conversations or transactions that they had with a person now dead. The statute, which has been in effect in substantially similar form for over a century, is grounded "on the concept that where death has sealed the lips of one of the parties to a personal transaction, the law, for the protection of his estate and his survivors, should and ought to seal the lips of anyone else making a claim against the estate” (Ward v Kovacs, 55 AD2d 391, 403 [2d Dept 1977]; see also, Matter of Erdmann, 198 Misc 1087, 1091 [Richmond County 1950] [where it was said that: "fairness requires that one party should not be permitted to give his version of a transaction or communication where the adversary in the controversy is dead; where death silences one, the law will silence the other. The purpose of the statute is to put both parties on equality”]).
On page 6 of plaintiffs’ memorandum of law, dated September 20, 1994, it is stated that: "Application of the Dead Man’s Statute, as propounded by the defendants, would have the chilling effect of preventing any person who is 'successfully’ defrauded by a fiduciary or attorney from recovering damages for his or her losses upon the death of the wrongdoer.” While the statute has been much criticized through the years because it does in fact have the effect suggested by plaintiffs, it has never been repealed, although the Code of Evidence proposed by the Law Revision Commission in the late 1970s *979 (but never passed) did call for a significant modification thereof. The reason that the section has survived for so long, notwithstanding that it may from time to time cause a seemingly unjust result, is because of the recognized difficulty that would be placed upon the personal representative of an estate if required to disprove the testimony of a party asserting fraudulent statements allegedly made by a person now deceased.
Plaintiffs herein seek retribution from Aleck’s estate and are therefore interested parties seeking to testify against the interests of the estate. If plaintiffs were permitted to present their version of the transactions and communications with Aleck and testify about what the deceased purportedly said or promised, it would place Aleck’s estate in the disadvantaged position that the Dead Man’s Statute is designed to prevent. Accordingly, plaintiffs are prohibited from testifying as to any affirmative action taken by Aleck concerning a personal communication or transaction with them including that he: asked them to transfer certain properties; told them that he owned certain properties; promised to protect plaintiffs’ interests; promised to reconvey certain property; received blank deeds; gave Mrs. Endervelt only the signature pages of David’s estate tax form; or received a loan from plaintiffs.
More closely contested is the question of whether plaintiffs may testify as to things that Aleck did not say or do in order to prove that in failing to inform or act he committed fraud. Although most of the cases on this issue are ancient, there is nothing indicated in later authorities to suggest that the rules set forth below are not still viable. In Clift v Moses (112 NY 426, 435 [1889]), it was stated that the statute: "prohibits not only direct testimony of the survivor that a personal transaction did or did not take place, and what did or did not occur between the parties, but also every attempt by indirection to prove the same thing, as by negativing the doing of a particular thing by any other person than the deceased, or by disconnecting a particular fact from its surroundings and permitting the survivor to testify to what on its face may seem an independent fact, when in truth it had its origin or directly resulted from a personal transaction.” In Boyd v Boyd (164 NY 234, 243 [1900]), it was ruled that: "The statute excludes all testimony on the part of a surviving or interested party 'concerning a personal transaction’ with the deceased. This prohibition cannot be evaded by any indirection, as by offering testimony of some negative fact. When it appears that *980 there was a personal transaction and that the testimony offered tends to show either what did take place between the parties or what did not, it must be excluded by force of the statute so long as it concerns the transaction or justifies an inference as to what it really was. The statute may be as effectually violated by testimony of a negative character as by affirmative proof of what actually took place.” (See also, Greenman v Butler, 258 App Div 311 [4th Dept 1939] [where it was held that (at 313): "It was as much error to permit the witness to testify to what the decedent did not say to him, as part of a personal transaction, as it would be to permit him to testify as to what decedent did say” (emphasis in original)]; Martin v Hillen, 21 NYS 309 [2d Dept 1892], affd 142 NY 140 [1894] [husband precluded from testifying that he did not know that deceased wife had any assets]; Matter of Blair, 99 App Div 81, 83 [3d Dept 1904] [testimony incompetent as involving, in an indirect way, a personal transaction with deceased, namely, that she had delivered the note to the claimant]; Haughey v Wright, 12 Hun 179, 180-181 [4th Dept 1877] ["proof that no personal transaction with the deceased took place is equally inadmissible with evidence that one did take place, and evidence leading to the inference, that such a transaction did or did not take place personally, with the deceased, is held to be within the mischiefs which (the statute) was designed to guard against”]; Holcomb v Holcomb, 95 NY 316, 325 [1884] ["Transactions and communications embrace every variety of affairs which can form the subject of negotiation, interviews, or actions between two persons, and include every method by which one person can derive impressions or information from the conduct, condition, or language of another”].)
Based on the foregoing authorities, I conclude that plaintiffs may not testify as to "negative” facts (matters of which Aleck did not inform plaintiffs) in order to establish a fraud claim against Aleck’s estate. Therefore, for example, Mrs. Endervelt cannot, directly or indirectly, testify that she was not informed of the existence of the relevant deeds as such testimony would be offered to prove that decedent fraudulently concealed the transactions from her.

Statute of Limitations and Burden of Proof

CPLR 203 (g) and 213 (8) provide that a cause of action for fraud must be commenced within (1) six years of the occur *981 rence of the fraud, or (2) two years of the actual or imputed discovery thereof, whichever is longer (K&E Trading & Shipping v Radmar Trading Corp., 174 AD2d 346 [1st Dept 1991]). The first of these two actions was commenced in June 1988 and the second in March 1989. It is undisputed that over six years had passed from the dates of the alleged fraud when the litigation was commenced.
On this motion, defendants argue that plaintiffs bear the burden of proving that by the use of due diligence the fraud could not have been discovered prior to 1986, and that plaintiffs will be unable to sustain that burden in light of the fact that the relevant testimony upon which plaintiffs rely will be excluded under the Dead Man’s Statute. In response, plaintiffs make two arguments: (1) that because of the attorney-client relationship between the parties, defendants bear the burden of proving that the causes of action are untimely, and therefore the Dead Man’s Statute would become irrelevant, and (2) the Statute of Limitations was tolled under the continuous representation doctrine based on the parties’ attorney-client relationship which existed until the day that Aleck died in March 1986.
When fraud is alleged more than six years after the event "the burden * * * [is] cast upon the plaintiff of proving that the fraud was not discovered * * * until within six [now two] years of the commencement of the action. If this were not so, the defendant would have to prove a knowledge in the plaintiff, which, in most cases, would be impossible.” (Mason v Henry, 152 NY 529, 539 [1897]; see also, Doyon v Bascom, 38 AD2d 645, 646 [3d Dept 1971]; Gaines v Huyler, 113 Misc 188, 194 [Sup Ct, Nassau County 1920], affd 206 App Div 777 [2d Dept 1923], affd 239 NY 611 [1925]; Miller v National City Bank, 69 F Supp 187, 196 [SD NY 1946], affd 166 F2d 723 [2d Cir 1948]; Shultz v Manufacturers & Traders Trust Co., 40 F Supp 675, 686 [WD NY 1941], affd 128 F2d 889 [2d Cir 1942].)
While plaintiffs cite a series of cases which place the burden on an attorney to establish the fairness of a transaction entered into with a client, none of these decisions deal with the issue of which party bears the burden of proving the application of the Statute of Limitations for fraud, and the court has found no authority that holds that when fraud is claimed in an attorney-client relationship, plaintiff’s traditional burden of proving lack of knowledge somehow shifts to defendant. However, there are cases involving fiduciary relationships in which the plaintiff was required to prove when *982 the fraud was discovered or should have been uncovered (i.e., Mason v Henry, supra; Shultz v Manufacturers & Traders Trust Co., supra; Whalen v Gerzof, 154 AD2d 843 [3d Dept 1989]; Adams v Merrill Lynch, Pierce, Fenner & Smith, NY County, Oct. 1, 1993, Lehner, J., index No. 022552/91). Since I find no reason to create a special rule to exempt clients of attorneys from this responsibility, I conclude that the burden of proving that the actions were instituted within the two-year discovery period of CPLR 213 (8) remains with the plaintiffs herein.
As for the continuous representation doctrine, it is true that in some situations the Statute of Limitations with respect to a claim by a client against an attorney is tolled until the attorney-client relationship is terminated as the doctrine "recognizes that a person seeking professional assistance has a right to repose confidence in the professional’s ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered” (Glamm v Allen, 57 NY2d 87, 93-94 [1982]; see also, Greene v Greene, 56 NY2d 86, 94 [1982]). "However, the continuous representation must be in connection with the particular transaction which is the subject of the action.” (Zaref v Berk & Michaels, 192 AD2d 346, 347-348 [1st Dept 1993].)
The doctrine has been applied to actions for legal malpractice (Glamm v Allen, supra; Zaref v Berk & Michaels, supra); for breach of contract by an attorney (Luk Lamellen U. Kupplungbau GmbH v Lerner, 166 AD2d 505 [2d Dept 1990]); and for rescission (Greene v Greene, supra; Schlanger v Flaton, NYLJ, Sept. 6, 1994, at 28, col 6 [Sup Ct, NY County, Davis, J.]).
Plaintiffs, however, have not cited a single case which applied the continuous representation doctrine to a fraud cause of action. Unlike the limitation periods applicable to the above-mentioned causes of action, the Statute of Limitations for fraud is not limited to an inflexible period which commences at the time of the alleged wrongdoing. The protection from concealment provided by the two-year discovery rule is sufficient to protect the interests of a client against his or her attorney. Certainly, once the client discovers the attorney’s fraud, it is not reasonable to expect the client to continue to maintain confidence in the professional’s good faith and the client should be, as are all other victims of fraud, required to investigate and access the facts. Thus, once fraud by the *983 attorney is discovered after the expiration of the six-year period provided in CPLR 213 (8), the client has two years in which to commence an action and no continuous representation after such discovery would toll this period.
Although, in light of the foregoing, it is questionable whether plaintiffs will be able to survive the Statute of Limitations bar, they have indicated that, even with an adverse ruling on the issues presented herein, they will be able to do so based on admissible testimony and documents. Hence, the issue will be left for trial.

 Although the term "dead man” is not employed in CPLR 4519, but rather is the term commonly used to refer thereto, it would seem that reference to this section should, under modern thought, be sex neutral and now be referred to the "Dead Person’s Statute”.