SANDS BROTHERS VENTURE CAPITAL II, LLC, SANDS BROTHERS VENTURE CAPITAL III, LLC, SANDS BROTHERS VENTURE CAPITAL IV, LLC, GENESIS MERCHANT PARTNERS LP, Plaintiff,

against
METROPOLITAN PAPER RECYCLING, INC., SALVATORE ZIZZA, E-CORPORATE ENGLISH LTD, RADIOIO, INC., Defendant.


Index No. 652341/2015

For Plaintiffs, Law Office of Wallace Neel, P.C., 43 West 43rd Street, Suite 65 New York, NY 10036, 646-524-6502 For Defendant, Rivkin Radler, LLP, 477 Madison Avenue New York, NY 10022, 212-445-9555


Andrew Borrok, J.

The following e-filed documents, listed by NYSCEF document number (Motion 004) 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202 were read on this motion to/for JUDGMENT - SUMMARY
Upon the foregoing documents, Salvatore Zizza's motion for summary judgment pursuant to CPLR § 3212 is granted solely to the extent that the (i) fraudulent conveyance (first) cause of action related to the 2009 Transactions and the 2010 Transactions, (ii) conspiracy and aiding and abetting fraudulent conveyance (second and third) causes of action for the 2009 Transactions and the 2010 Transactions, (iii) conspiracy to breach fiduciary duty (fifth) cause of action, (iv) constructive trust (sixth) cause of action, (v) rescission (seventh) cause of action, (vi) restitution (eighth) cause of action), (vii) unjust enrichment (tenth) cause of action, and (viii) the claim for punitive damages and attorneys' fees are dismissed.
I. The Relevant Facts and Circumstances
This lawsuit arises from a $58 million fraud masterminded by Wilbur Anthony Huff in which he [*2]allegedly directed other co-conspirators to divert money from O2HR, LLC (O2HR), a company that provided outsourced management of payroll, tax, and insurance obligations for client companies (NYSCEF Doc. No. 143, ¶¶ 40-45). Mr. Huff was indicted by the United States Attorney for the Southern District of New York, pled guilty in December 2014, and was sentenced to 12 years in prison (id., ¶¶ 2-3). 
The gravamen of the Amended Complaint (hereinafter defined) is that O2HR was rendered insolvent as a result of Mr. Huff and the defendants' fraud and, as a result, O2HR has now defaulted on certain promissory notes (id., ¶¶ 26-35). To wit, the Amended Complaint alleges that in 2008 and 2009, O2HR issued five promissory notes (collectively, the Notes) in favor of Sands Brothers Venture Capital II, LLC, Sands Brothers Venture Capital III, LLC, Sands Brothers Venture Capital IV, LLC, and Genesis Merchant Partners LP (collectively, the Plaintiffs) (id., ¶¶ 33-37). And, the value in O2HR was allegedly fraudulently transferred to entities controlled by Mr. Huff, including River Falls Investments, LLC, River Falls Financial Services, LLC, River Falls Holdings, LLC, among others (collectively, the Huff-Controlled Entities) (id., ¶¶ 40-45). The Plaintiffs also allege that Mr. Huff directed and controlled O2HR through its CEO, Thomas Bean, to fraudulently convey O2HR assets so as to divert money from its creditors (id., ¶¶ 47-50).
A. Mr. Zizza's Alleged Involvement
The Plaintiffs assert claims against Mr. Zizza for his role as consultant to PSQ, LLC (PSQ) and CEO of General Employment Enterprises, Inc. (GEE), whereby Mr. Zizza allegedly misappropriated or received O2HR derived assets.
1. Consulting for PSQ
Pursuant to a Consulting Agreement (NYSCEF Doc. No. 178, the Consulting Agreement), dated March 1, 2009, by and between PSQ, LLC and Sal Zizza, Mr. Zizza provided general advisory and consulting services to PSQ for a monthly fee of $20,000. The Plaintiffs allege that Mr. Zizza was paid the $20,000 monthly fee from March 2009 to at least April 2010 and that these payments were funded through Huff-Controlled Entities (NYSCEF Doc. No. 143, ¶¶ 111-114). 
2. The $2,300,000 Conveyance
In 2009, Mr. Zizza became the CEO of GEE, a publicly-traded temporary staffing company headquartered in Illinois, as Mr. Huff and others engaged in a scheme where $2,300,000 was taken from and returned to GEE's bank account to recapitalize Park Avenue Bank (NYSCEF Doc. No. 143, ¶¶ 55-67). 
On or about July 21, 2009, Mr. Huff and others took $2,300,000 from a GEE bank account to purportedly purchase a certificate of deposit at Park Avenue Bank (NYSCEF Doc. No. 39, ¶ 50a.). The $2,300,000 from GEE was not used to buy a certificate of deposit, however, but to reimburse Park Avenue Bank for the $2,300,000 loan previously issued to another Huff-[*3]Controlled Entity and a counterfeit receipt for the certificate of deposit (the CD) was made, which falsely stated that the sum was invested in a 90-day certificate of deposit (id.; NYSCEF Doc. No. 201). After the $2,300,000 withdrawal came to the attention of GEE's Audit Committee and its outside auditor, BDO Seidman LLC (BDO), Mr. Huff caused approximately $2,300,000 to be returned to GEE's bank account from various Huff-Controlled Entities in November and December of 2009 (the $2,300,000 Conveyance) (NYSCEF Doc. No. 144, ¶¶ 23-32). A large portion of the $2,300,000 Conveyance was allegedly comprised of money that O2HR collected from its clients for their employment tax and other obligations, which Mr. Huff diverted to other entities including Oxygen and River Falls, and, ultimately, to GEE (id.).
Mr. Zizza allegedly became involved with resolving the accounting for the CD, including attending a GEE Board of Directors' meeting on November 29, 2009 and speaking with BDO in December 2009, although he did not have a formal role with GEE during this time (NYSCEF Doc. No. 144, ¶ 27-37). At some point in December 2009, Mr. Zizza also allegedly came to understand that a debit memo for the GEE bank account stated that the $2,300,000 had been transferred to Park Avenue Insurance, and not a purported CD (id.; NYSCEF Doc. No. 194).
On December 8, 2009, the prior CEO of GEE, Ronald Heineman, attempted to provide a new explanation of why GEE received $2,300,000 from Huff-Controlled Entities, and he claimed to have negotiated an assignment agreement with Mr. Bean, as manager of River Falls Investments, to purchase the CD from GEE at face value (NYSCEF Doc. No. 143, ¶¶ 72-73; NYSCEF Doc. No. 196). On December 22, 2009, BDO issued a demand letter to GEE's Audit Committee Chair identifying accounting inconsistencies with the purported CD, advising that there was insufficient evidence to formally conclude the audit, and demanding an independent investigation, which letter was allegedly forwarded to Mr. Zizza and Mr. Bean (id., ¶¶ 78-81). 
On December 23, 2009, Mr. Heineman resigned as GEE's CEO and Mr. Zizza was appointed as his replacement (id., ¶ 83). On December 24, 2009, Mr. Zizza allegedly reassured BDO that an audit could be concluded without the need for an independent investigation and BDO subsequently issued an unqualified opinion as to GEE's 2009 financial statements (id., ¶¶ 83-89). On January 8, 2010, Mr. Zizza represented in a letter to BDO and the SEC Form 10-K that GEE was reimbursed for the $2,300,000 through a non-recourse assignment of the CD to an unrelated party (id., ¶¶ 91-92).
In sum and substance, the Plaintiffs allege that Mr. Zizza became CEO of GEE to help Mr. Huff hide the $2,300,000 Conveyance, covered up the alleged misconduct detected by auditors, and made false and misleading statements to BDO and the SEC as to the $2,300,000 Conveyance.
3. The 2009 Transactions and 2010 Transactions
The Plaintiffs allege that through a number of deceptively crafted steps Mr. Huff fraudulently used O2HR assets to buy a majority of common shares in GEE, and then used GEE to transfer value out of O2HR in 2010 while Mr. Zizza was CEO. 
In the first step, Mr. Bean allegedly took cash and receivables from the insolvent O2HR and [*4]exchanged them for ownership of shares and/or assets in certain O2HR client companies that owed receivables to O2HR (id., ¶¶ 122-123). While Mr. Bean allegedly forgave those receivables in partial exchange for ownership of O2HR customers' assets, he did not provide the value that he received to O2HR (id., ¶¶ 124-125). Rather, Mr. Bean allegedly put his interest in the O2HR client companies into entities that he personally owned, including WTS Acquisition Corp. (WTS) and RFFG, LLC (id., ¶ 127). The Plaintiffs allege that such a scheme took place when Mr. Bean, through WTS, acquired select assets of On-Site Services, Inc., RFFG of Cleveland, LLC, and DCMM Staffing, LLC on January 1, 2009 (the 2009 Transaction) (id., ¶¶ 122-123; NYSCEF Doc. Nos. 166, 167).
Next, Mr. Bean, through WTS, allegedly swapped assets and/or ownership interests in the O2HR client companies for shares of GEE stock when Mr. Zizza as CEO negotiated on behalf of GEE for the purchase of On-Site, RFFG, and DCMM through its subsidiary, Triad Personnel Services (Triad) (NYSCEF Doc. No. 169, ¶ 5).
Pursuant to an Asset Purchase Agreement (NYSCEF Doc. No. 170), dated June 1, 2010, by and between On-Site Services, Inc. (OnSite) as seller, Mr. Bean, GEE, and Triad as buyer, Triad acquired certain assets of On-Site for the purchase price of $600,000, which included 1,476,015 shares of GEE common stock, valued at approximately $487,000 (the On-Site Transaction). The Plaintiffs allege that Mr. Bean, through WTS, swapped assets and/or ownership interests of On-Site in the On-Site Transaction, for 1,476,015 shares of GEE stock, which shares were delivered to Big Red Investments Partnership, Ltd. (Big Red), a company owned by Mr. Bean (NYSCEF Doc. No. 143, ¶¶ 133-138).
Pursuant to an Asset Purchase Agreement (NYSCEF Doc. No. 173), dated November 1, 2010, by and between of DMCC Staffing, LLC (DMCC) and RFFG of Cleveland, LLC (RFFG) as sellers, Mr. Bean, GEE, and Triad as buyer, Triad acquired certain assets of DMCC and RFFG for a purchase price of $4,800,000, which included 5,581,395 shares of GEE common stock, valued at approximately $2,400,000 (the Ameritemps Transaction; the On-Site Transaction and the Ameritemps Transaction, together, the 2010 Transactions). The Plaintiffs allege that Mr. Bean, through WTS, traded assets of DMCC and RFFG in the Ameritemps Transaction for 5,581,395 shares of GEE stock, of which 3,500,000 GEE shares were placed into RFFG, LLC and the remainder was placed into Big Red (NYSCEF Doc. No. 143, ¶¶ 140-144).
The Plaintiffs allege that Mr. Zizza was aware that the 2010 Transaction constituted conveyances of O2HR assets to GEE and that he acted with intent to hinder or delay O2HR's creditors when facilitating these transactions.
On September 9, 2015, the SEC announced that three former CEOs of GEE, including Mr. Zizza, were charged by the SEC with misleading auditors in connection with the $2,300,000 Conveyance (id., ¶ 5). The SEC alleged, among other things, that Mr. Zizza should have known that the assignment agreement for the CD between GEE and River Falls Investment was a related party transaction, given Mr. Huff's control over both entities (NYSCEF Doc. No. 144). Mr. Zizza settled his alleged violations with the SEC for a $150,000 fine (id.).
B. Relevant Procedural History
The Plaintiffs commenced this action by filing a Summons with Notice on June 30, 2015 (NYSCEF Doc. No. 1) and their Complaint on November 24, 2015 (NYSCEF Doc. No 7). In response, Mr. Zizza and Metropolitan Paper Recycling, Inc. filed a motion to dismiss the Complaint on February 16, 2016 (Mtn. Seq. No. 001). While the motion to dismiss was pending, the Plaintiffs filed their Amended Complaint on April 5, 2016 (NYSCEF Doc. No. 37, the Amended Complaint), which was then addressed in the opposition and reply submissions on the motion to dismiss, and by the court (Ramos, J.) addressed its ultimate decision to the Amended Complaint.
Pursuant to a decision and order, dated September 23, 2016, the court (Ramos J.) denied the motion to dismiss for the reasons set forth in the record following oral argument on August 16, 2016 and ordered that the defendants file an answer to the Amended Complaint (NYSCEF Doc. No. 74). The decision did not address Mr. Zizza's arguments on the statute of limitations or documentary evidence (NYSCEF Doc. No. 140, ¶ 16).
The defendants E-Corporate English Ltd. and Radioio, Inc. did not file an answer and the Plaintiffs have not sought a default judgment against these entities. By stipulation, dated May 29, 2018, the action was discontinued as against defendant, Metropolitan Paper Recycling, Inc. (NYSCEF Doc. No. 128).
Mr. Zizza is the only remaining non-defaulting defendant in this action and the Plaintiffs assert the followings claims against him: (i) fraudulent conveyance (first cause of action), (ii) aiding and abetting fraudulent conveyance (second cause of action), (iii), conspiracy to fraudulently convey (third cause of action), (iv) aiding and abetting breach of fiduciary duty (fourth cause of action), (v) conspiracy to breach fiduciary duty (fifth cause of action), (vi) constructive trust (sixth cause of action), (vii) rescission (seventh cause of action), (viii) equitable restitution (eighth cause of action), (ix) unjust enrichment (ninth cause of action), and (x) restitution (tenth causes of action).
C. The Relevant Evidence
1. Salvatore Zizza
Mr. Zizza submits an affidavit, dated October 30, 2019, in support of the instant motion (NYSCEF Doc. No. 141) in which he attests that he was the CEO of GEE from December 23, 2009 until December 26, 2012 and that the only shares of GEE stock he owned were purchased with his own personal funds (id., ¶ 5). Mr. Zizza also asserts that there is no evidence that he has been a transferee or beneficiary of any O2HR assets (id., ¶ 6).
Mr. Zizza concedes that he provided consulting services to PSQ and Stephen Pence from March 2009 to January 2010, but that Mr. Zizza had no knowledge that monthly consulting fees were being funded from sources other than Mr. Pence (id., ¶¶ 12-13). Mr. Zizza explains that he advised Mr. Pence on company governance issues and because Mr. Pence had no previous [*5]involvement as an executive at a public company (id., ¶ 14). Mr. Zizza asserts that the monthly payments were supported by fair consideration and were not fraudulent (id. ¶ 16).
2. Steven Sands
Steven Sands, the Plaintiffs' principal, was deposed on January 31, 2018 (NYSCEF Doc. No. 164). When asked about the Plaintiffs' allegations that Mr. Bean traded Mr. Zizza "ill-gotten assets" for GEE shares, Mr. Sands testified that he was not sure if Mr. Zizza stole anything but that he believed Mr. Zizza received the ill-gotten assets as chairman of GEE and that he did not know what Mr. Zizza received from GEE in exchange (id. at 168:13-169:23). 
3. Judson B. Wagenseller, Attorney for WTS
Judson B. Wagenseller was the attorney who represented WTS as seller in the 2010 Transactions and was deposed in a companion action (Index No. 654168/2012) on August 3, 2017 (NYSCEF Doc. No. 478, at 36:13-19). Mr. Wagenseller testified that he was paid by Mr. Huff for his representation of WTS in the 2009 Transaction and that he believed Mr. Bean funded these acquisitions with loans from the River Falls entities (id. at 100:8-11, 105:18-25, 108-21, 119:2-10). 
Mr. Wagenseller also testified that he represented WTS as buyer when it acquired DMCC and RFFG and that Mr. Bean funded this acquisition with $750,000 borrowed from RFFS, which he described as a "a pocket book controlled by Mr. Huff" (id. at 82:25-84:7). Mr. Wagenseller could not recall whether the $750,000 loan to Mr. Bean for the Ameritemps Transaction was documented via a note or otherwise, but he recalled seeing accounting for the same (id. at 119:20-120:4). Mr. Wagenseller also stated that he represented WTS as buyer when it acquired the outstanding stock of On-Site on January 1, 2009 (id. at 97:1-12, 103:8-12). Mr. Wagenseller believes that Mr. Bean paid $125,000 for On-Site and in that accounting, he recalled seeing a reference to "monies related to On-Site" (id. at 120:13-21).
Mr. Wagenseller did not know if interest was repaid on the loans from RFFS to Mr. Bean or if these loans were documented (id. at 120:22-121:6). 
4. The SEC Order Against Mr. Zizza
Pursuant to an order, dated September 9, 2015, the SEC instituted a cease-and-desist proceeding against Mr. Zizza (NYSCEF Doc. No. 144, the Order). To the extent that the Order sets forth factual allegations regarding Mr. Zizza's purported misconduct, the court recognizes that Mr. Zizza settled the proceedings with the SEC without admitting or denying those findings in the Order. Accordingly, the Order, while admissible, has no probative evidentiary value on the instant motion for summary judgment.
II. Discussion
On a motion for summary judgment, the movant "must make a prima facie showing of [*6]entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986], citing Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Once this showing is made, the burden shifts to the opposing party to produce evidence in admissible form sufficient to establish the existence of a triable issue of fact (Zuckerman v New York, 49 NY2d 557, 562 [1980]).
A. Fraudulent Conveyance (First Cause of Action)
The Plaintiffs allege that Mr. Zizza was involved in the following fraudulent conveyances: (i) the 2009 Transactions, (ii) the 2010 Transactions, (iii) the $2,300,000 Conveyance, and (iv) the $20,000 monthly payment to Mr. Zizza for his consulting work with PSQ (NYSCEF Doc. No. 143, ¶ 161). In support of his motion for summary judgment, Mr. Zizza primarily argues that the claim for fraudulent conveyance must be dismissed as time barred.
In New York, a claim for fraudulent conveyance based on actual intent to defraud is timely if such claim is brought either within six years of the date the alleged conveyance occurs, or within two years of the date the conveyance should have been discovered (Wall St. Assoc. v Brodsky, 257 AD2d 526, 530 [1st Dept 1999]). A claim for constructive fraud is governed by the six-year limitation and such a claim arises at the time the fraud or conveyance occurs (id.; CPLR § 213 [1]).
1. The 2009 Transactions
Mr. Zizza argues that dismissal is required as it relates to the 2009 Transactions because he cannot be held liable for Mr. Bean's allegedly fraudulent conveyance of assets out of O2HR and into WTS as this claim is time-barred. The record indicates that the purported transfers from O2HR to WTS occurred on January 1, 2009 and the Summons here was filed on June 30, 2015, more than six years after the fact (NYSCEF Doc. No. 1). To the extent that the Plaintiffs argue that the question of when they should have known about Mr. Zizza's allegedly fraudulent actions is a question of fact for the jury and that the first public acknowledgment of the fraud did not occur until Mr. Huff's indictment on October 1, 2012 was unsealed and that Mr. Sands testified that he had "never even 'heard of Park Avenue Bank, until clearly the front page stuff' meaning the indictment," this is not sufficient to save the claim under the discovery accrual rule (NYSCEF Doc. No. 182 at 10-11, citing Sands 8/3/16 Tr. at 260:18, Neel Aff. Ex. O). 
CPLR 203(g) and 213(8) are clear that a cause of action for fraud must be commenced (i) within six years of the occurrence of the fraud or (ii) within two years of the actual or imputed discovery thereof, whichever is longer (K & E Trading & Shipping v Radmar Trading Corp., 174 AD2d 346 [1st Dept 1991]). Where fraud is alleged more than six years after the actual occurrence thereof, the burden is on the plaintiff (i.e., here, Sands Brothers) of proving that the fraud was not discovered and reasonably could not have been discovered until within two years of the commencement of the action (Mason v Henry, 152 NY 529, 539 [1897]; Endervelt v Slade, 162 Misc 2d 975 [Sup Ct NY County 1994]). The Plaintiffs simply do not meet their burden. As an initial matter, the court notes that the only place that the Plaintiffs discuss the [*7]discovery accrual rule in their opposition papers is with respect to the Genesis claim, discussed infra. Putting that aside, even if the Plaintiffs discovery occurred in October 2012, i.e., the only date the provide in the way of discovery in the papers at all, the claim needed to be filed by January 2015 because the discovery occurred more than two years before the expiration of the six year statute of limitations Put another way, discovery accrual is not available to the Plaintiffs here because their discovery as they indicate did not occur later than the six year statute of limitations. Accordingly, the branch of Mr. Zizza's motion for summary judgment to dismiss the first claim for fraudulent conveyance related to the 2009 Transactions is granted.
2. The 2010 Transactions
Mr. Zizza also argues that the claim for fraudulent conveyance related to the 2010 Transactions should be dismissed as time-barred. With respect to the 2010 Transactions, however, there is no question that the Plaintiffs timely commenced their fraudulent conveyance claim within 6 years, i.e., in 2015. Mr. Zizza also argues that there is no viable claim for fraudulent conveyance related to the 2010 Transactions because he did not personally receive any assets as a result of the 2010 Transactions. Mr. Zizza relying on the testimony of Mr. Sands who stated that he believed Mr. Zizza received O2HR-derived assets only as chairman of GEE during the 2010 Transactions argues principally that an officer's receipt of a salary from the transferee corporation does not make that officer a transferee or beneficiary of the transfer (D'Mel & Assoc. v Athco, Inc., 105 AD3d 451, 452-453 [1st Dept 2013] [citation omitted]). And, a plaintiff creditor must obtain recovery either against the debtor or transferee of the alleged fraudulent transfer (Matter of 4042 E. Tremont Café Corp. v Sodono, 177 AD3d 456, 458 [1st Dept 2019]). In the opposition papers, the Plaintiffs simply fail to adequately address why the claim as it relates to the 2010 Transaction should not be dismissed. Accordingly, that branch of Mr. Zizza's motion for summary judgment to dismiss the first claim for fraudulent conveyance related to the 2010 Transactions is granted.
3. The $2,300,000 Conveyance
Mr. Zizza did not specifically move to dismiss that portion of the fraudulent conveyance claim for the $2,300,000 Conveyance but, for the avoidance of doubt, this claim is sustained because the $2,300,000 Conveyance allegedly occurred in November and December of 2009 such that the action was timely commenced within six years on June 30, 2015. Further, there remain material issues of fact as to whether Mr. Zizza received any O2HR-derived assets in any capacity outside of his role as GEE's CEO for the $2,300,000 Conveyance as the record is silent on this point. Accordingly, that branch of Mr. Zizza's motion for summary judgment to dismiss the first claim for fraudulent conveyance related to the $2,300,000 Conveyance is denied.
4. The Consulting Agreement
Mr. Zizza argues that any fees paid pursuant to the Consulting Agreement before June 30, 2009 are not recoverable because of the applicable six-year limitation period. The court agrees. As this action was commenced on June 30, 2015, the Plaintiff may only assert a claim of fraudulent conveyance for the alleged consulting fees paid to Mr. Zizza after June 30, 2009. 
Although Mr. Zizza relies on D'Mel, supra, to also argue that he cannot be liable for receipt of compensation for services rendered to a purported transferee of a debtor's assets, his reliance here is misplaced. D'Mel only limits the liability of an officer or director who receives compensation from a transferee corporation (see Staudinger+Franke GmbH v Casey, 2015 US Dist LEXIS 73912, at *28-29 [SDNY 2015] [explaining that an officer's salary is presumed to be made for fair consideration unless there was bad faith or the payments were excessive]). In contrast, a consultant is an independent contractor and payments to independent contractors are not necessarily entitled to the same presumption of fair consideration. It is unclear whether the presumption of fair consideration applies when anyone other than a corporate officer receiving a salary from the corporate transferee. In other words, D'Mel simply does not shield Mr. Zizza from liability because he was not an officer or director of PSQ. As a result, the Plaintiffs may assert a claim against Mr. Zizza for fraudulently conveyed funds that he allegedly received from Huff-Controlled Entities as a result of work completed for PSQ (NYSCEF Doc. No. 143, ¶¶ 111-114). Whether Mr. Zizza's $20,000/month salary as a consultant was fair consideration for actual services rendered remains an issue of fact for trial.
The record is also unclear as to the nature and extent of services that Mr. Zizza performed for PSQ. Mr. Zizza only adduces a self-serving affidavit attesting that he advised Mr. Pence on company governance issues and because Mr. Pence had never been previously involved as an executive in a public company. Mr. Zizza also asserts that he had no knowledge that the monthly consulting fees were funded from a source other than Mr. Pence, the sums were supported by fair consideration, and that the sums were not fraudulent. However, whether such services were validly performed by Mr. Zizza and the origin of the monthly payments remain issues of fact for trial.
To the extent that Mr. Zizza argues that the Amended Complaint also contains allegations that Mr. Bean converted assets of O2HR and that such a claim is time barred, the court declines to speculate on this issue because the Plaintiffs do not expressly assert a cause of action for conversion. Accordingly, that branch of Mr. Zizza's motion for summary judgment to dismiss the first claim for fraudulent conveyance related to the Consulting Agreement is denied.
5. Genesis Merchant Partners LP
Mr. Zizza additionally argues that Genesis' claims for fraudulent conveyance related to the 2009 Transactions and 2010 Transactions must be dismissed as time-barred because Genesis is a non-resident of New York and subject to the statute of limitations in Connecticut where its principal place of business is located. 
Pursuant to CPLR § 202, a non-resident that brings a lawsuit in New York based on events that give rise to a cause of action accruing outside of New York must commence the action within New York's limitation period and the limitation period of the place where the cause of action accrued. The time and place of injury determines where a tort action accrues (Global Fin. Corp. v Triarc Corp., 93 NY2d 525, 529 [1999]). When the alleged injury is purely economic, the place of injury is where the party resides and sustains the economic impact of the loss (id.). Here, Genesis is a non-resident of New York and any alleged injury is purely economic such that [*8]its legal residence determines where the action accrues.
However, inasmuch as the Plaintiffs rely on Gordon & Co. v Ross, 63 F Supp 2d 405, 406 [SD NY 1999] to argue that a limited partnership's claims accrue where its partners reside, this standard has not been adopted by the First Department, which has determined that a partnership's legal residence is where its principal place of business is maintained (Proforma Partners v Skadden Arps Slate Meagher & Flom, 280 AD2d 303, 303 [1st Dept 2001], citing Ackerman v Price Waterhouse, 252 AD2d 179, 192, n 5 [1st Dept 1998]). 
Pursuant to a form that Genesis issued to the SEC, dated November 14, 2007, the record indicates that Genesis is a Delaware limited partnership with its principal place of business in Connecticut (NYSCEF Doc. No. 151). Inasmuch as the Plaintiffs submit no evidence to the contrary, the claims of Genesis must be analyzed under Connecticut law.
Pursuant to Connecticut law, the statute of limitations to set aside a conveyance is four years after the transfer was made or, within one year after the transfer could have been reasonably discovered (Conn Gen Stat § 52-552j). 
The claims related to the 2009 Transactions and the 2010 Transactions are under the borrowing statute, therefore, time-barred because the Plaintiff's summons with notice was filed on June 30, 2015 (NYSCEF Doc. No. 1), which date exceeded the four-year limitation period after these alleged transfers were made. Nor does the discovery-accrual rule save the claims of Genesis because even if the Plaintiffs could not have reasonably discovered the GEE related transactions until the unsealing of Mr. Huff's indictment on October 1, 2012 (see NYSCEF Doc. No. 197), Genesis did not timely commence its action for fraudulent conveyance within one year of that date. 
For the avoidance of doubt, even if Delaware law applied to the claims brought by Genesis, the claims would still be time barred as Delaware's statute of limitations for claims of fraudulent conveyance is the same as Connecticut (see Del CodeAnn tit 6, § 1309 (1) [a claim of fraudulent conveyance must be brought within four years after the transfer or within one year after the transfer could reasonably have been discovered]). Accordingly, the branch of Mr. Zizza's motion for summary judgment to dismiss the first cause of action for fraudulent conveyance related to the 2009 Transactions and 2010 Transactions as asserted by Genesis is granted.
B. Conspiracy and Aiding & Abetting Fraudulent Conveyance (Second and Third Causes of Action)
The Plaintiffs allege that Mr. Zizza assisted and/or had a corrupt agreement with other defendants to fraudulently convey O2HR assets.
In Federal Deposit Ins. Corp. v Porco, the Court of Appeals held that New York Debtor and Creditor Law does not create a cause of action for conspiracy or aiding and abetting fraudulent conveyance against a defendant that merely assists a debtor in transferring assets where the [*9]defendants are neither transferees of the assets nor beneficiaries of the conveyance (75 NY2d 840 at 842 [1990]; see also Estate of Shefner, 127 AD3d at 442 [1st Dept 2015]). 
For the reasons set forth above, those portions of the Plaintiffs' claims for conspiracy and aiding and abetting fraudulent conveyance regarding the 2009 Transactions and the 2010 Transactions must be dismissed. 
However, those portions of the Plaintiffs' claims for conspiracy and aiding and abetting fraudulent conveyance related to the $2,300,000 Conveyance and the Consulting Agreement are sustained because there is simply insufficient evidence to indicating that Mr. Zizza was not a transferee or a beneficiary of these transactions. 
C. Conspiracy and Aiding & Abetting Fiduciary Duty (Fourth and Fifth Causes of Action)
The Plaintiffs allege that Mr. Zizza conspired with and aided and abetted Mr. Bean's ongoing breach of fiduciary duty to O2HR by facilitating the 2010 Transactions. Mr. Zizza argues that he should be granted summary judgment on the fourth and fifth causes of action related to Mr. Bean's purported breach of fiduciary duty because these claims are time-barred under New York law. Mr. Zizza further argues that a three-year limitation period should apply to the underlying claim for Mr. Bean's breach of fiduciary duty because the Plaintiffs seek monetary damages, not equitable relief.
As is well-settled, the applicable limitation period for a breach of fiduciary duty depends on the substantive remedy that the plaintiff seeks (IDT Corp. v Morgan Stanley Dean Witter & Co., 12 NY3d 132, 139 [2009] [citation omitted]). When the remedy sought by a plaintiff is purely monetary, the lawsuit alleges "injury to property" under CPLR § 214 (4) and the action is subject to a three-year limitation period (id.).
In their opposition papers, the Plaintiffs argue that the breach of fiduciary duty claims are not time-barred because the discovery rule postpones the start of the applicable limitation period. Although the Plaintiffs do not supply legal authority in support of its argument, the Plaintiffs in sum and substance refer to the legal rule that where an allegation of fraud is essential to a breach of fiduciary duty claim, the statute of limitations is six years and the discovery accrual rule applies (Gerschel v Christensen, 143 AD3d 555, 557 [1st Dept 2016] [citations omitted]).
As Mr. Bean's purported breach of fiduciary duty involves the fraudulent conveyance of O2HR funds during the 2010 Transactions, these allegations require a finding that the alleged fraud is essential to Mr. Bean's breach of his fiduciary duty and the six-year limitation period should apply (id.). Under these circumstances, the Plaintiff's claims against Mr. Zizza for aiding and abetting Mr. Bean's breach of fiduciary duty in 2010 were timely commenced by June 30, 2015 within the six-year limitation period.
However, the Plaintiffs' claim for conspiracy to breach a fiduciary duty must be dismissed [*10]because to sustain a claim of conspiracy, each defendant must independently owe a fiduciary duty to the plaintiffs and there is no independent fiduciary duty owed by Mr. Zizza to the Plaintiffs (Official Comm. of Unsecured Creditors ex rel. SmarTalk Teleservices, Inc. Bankruptcy Estate v Donaldson, Lufkin & Jenrette Sec. Corp., 2002 US Dist LEXIS 3747, at *43 [SDNY 2002] [surveying New York and California law to conclude that there can be no conspiracy to breach a fiduciary duty unless each defendant independently owed a fiduciary duty to the plaintiff]). Accordingly, the branch of Mr. Zizza's motion for summary judgment to dismiss the fourth cause of action for aiding and abetting breach of fiduciary duty is denied, and that branch of Mr. Zizza's motion for summary judgment to dismiss the fifth cause of action for conspiracy to breach a fiduciary duty is granted.
D. Constructive Trust (Sixth Cause of Action)
Mr. Zizza argues that the court should grant summary judgment and dismiss the Plaintiffs' claim for a constructive trust because there is no confidential or fiduciary relationship between the Plaintiffs and Mr. Zizza to form the basis for a constructive trust. In their opposition papers, the Plaintiffs argue that there is no strict requirement that a fiduciary or confidential relationship exist in order for a constructive trust to be applied.
Four elements are required to establish a constructive trust: (1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment (Sharp v Kosmalski, 40 NY2d 119, 121 [1976]). Even accepting the Plaintiffs' argument that a constructive trust may be imposed in the absence of a fiduciary relationship between the Plaintiffs and Mr. Zizza (Simonds v Simonds, 45 NY2d 233, 242 [1978] [noting that the four factors in Sharp should not be rigidly limited]), the claim for a constructive trust must nevertheless be dismissed as duplicative of the Plaintiffs' claim for unjust enrichment (see Taberna Preferred Funding II, Ltd. v Advance Realty Group LLC, 2014 NY Slip Op 51461[U], *15 [Sup Ct, NY County 2014] [recognizing that purpose of a constructive trust is to prevent unjust enrichment citing Simonds, supra and dismissing the claim for a constructive trust as duplicative of the unjust enrichment claim]). Accordingly, that branch of Mr. Zizza's motion for summary judgment to dismiss the sixth cause of action for a constructive trust is granted.
E. Rescission (Seventh Cause of Action)
Mr. Zizza also argues that the court should grant summary judgment and dismiss the Plaintiffs' seventh cause of action for rescission because such equitable remedy is not permitted where the Plaintiffs will be satisfied by money damages. 
The equitable remedy of rescission is invoked at the court's discretion where there is no complete and adequate remedy at law and the status quo may be substantially restored (Rudman v Cowles Communications, Inc., 30 NY2d 1, 13 [1972]). Here, the Plaintiffs seek to recover their monetary investment pursuant to the Notes such that money damages will make them whole (see Romanoff v Romanoff, 148 AD3d 614, 616 [1st Dept 2017] [affirming summary judgment to dismiss the claim for rescission where money damages were available to make the plaintiff whole]). Accordingly, that branch of Mr. Zizza's motion for summary judgment to dismiss the [*11]seventh cause of action for rescission must be granted.
F. Equitable Restitution (Eighth Cause of Action)
Mr. Zizza argues that the court should grant summary judgment and dismiss the Plaintiffs' claim for equitable restitution because equitable restitution is only available in the absence of a remedy at law. 
The essential inquiry in an action for restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered (Paramount Film Distrib. Corp. v State, 30 NY2d 415, 421 [1972]). Restitution is not available where there is an adequate remedy at law (Waxman v Envipco Pick Up & Processing Servs., 2006 US Dist LEXIS 3883, *15 [SD NY 2006] [citing Rudman, supra]). As the Plaintiffs have a remedy for money damages, that branch of Mr. Zizza's motion for summary judgment to dismiss the eighth cause of action for equitable restitution must be granted.
G. Unjust Enrichment (Ninth and Tenth Causes of Action)
Finally, Mr. Zizza argues that the court should grant summary judgment and dismiss the Plaintiffs' claim for unjust enrichment because (i) he did not receive any O2HR value, and (ii) the relationship between the Plaintiffs and Mr. Zizza is too "attenuated" to permit such a claim
The elements of unjust enrichment are that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered (Georgia Malone & Co., Inc. v Rieder, 19 NY3d 511, 516 [2012]). While a plaintiff is not required to allege privity to sustain a claim for unjust enrichment, the defendant must be aware the plaintiff's existence and the connection between the parties should not be too attenuated (id. at 517). 
Here, the Plaintiffs have sufficiently alleged that Mr. Zizza received O2HR derived assets from the Huff-Controlled Entities pursuant to the monthly $20,000 payment for his consulting services to PSQ. Further, while the Amended Complaint does not allege that Mr. Zizza had any dealings with the Plaintiffs, Mr. Zizza simply fails to adduce any evidence to confirm or deny whether he was aware of the Plaintiffs' existence to support or deny an unjust enrichment claim. Thus, there remain triable issues of fact regarding whether Mr. Zizza was enriched at the Plaintiffs' expense and whether there was the requisite awareness by Mr. Zizza of the Plaintiffs' existence. Accordingly, the branch of Mr. Zizza's motion for summary judgment to dismiss the ninth cause of action for unjust enrichment is denied. The tenth cause of action for unjust enrichment is, however, dismissed as duplicative because it simply repeats the same allegations under the ninth cause of action for unjust enrichment.
For the avoidance of doubt, the branches of Mr. Zizza's motion to dismiss the Plaintiffs' claim for punitive damages and the recovery of legal fees are granted because the Plaintiffs do not raise any objection in their opposition papers to this aspect of Mr. Zizza's motion and, in any event, recovery of punitive damages and legal fees would not be appropriate against Mr. Zizza [*12]here.
Accordingly, it is
ORDERED that Mr. Zizza's motion for summary judgment is granted solely to the extent that the (i) first cause of action for fraudulent conveyance related to the 2009 Transactions and the 2010 Transactions, (ii) second and third causes of action for conspiracy and aiding and abetting fraudulent conveyance for the 2009 Transactions and the 2010 Transactions, (iii) fifth cause of action for conspiracy to breach fiduciary duty, (iv) sixth cause of action for a constructive trust, (v) seventh cause of action for rescission, (vi) eighth cause of action for restitution, (vii) tenth cause of action for unjust enrichment, and (viii) claims for punitive damages and attorneys' fees are dismissed, but otherwise denied; and it is further
ORDERED that the Clerk is directed to enter judgment in accordance with the foregoing.
Date: 5/8/2020